## 29680. JACKSON v. THE STATE.

HILL, Justice.

Tony Jackson was indicted for the murder of Michael Daniels. The trial judge instructed the jury on the law of murder and voluntary manslaughter and, at the defendant's request, extensively on self-defense. No objections were made to the charge. The jury found the defendant guilty of murder and sentenced him to life imprisonment. On appeal he enumerates as error the failure of the trial court to charge the jury on involuntary manslaughter and the overruling of his motion for new trial on the general grounds.

The state's evidence showed that the defendant stabbed the victim twice with a knife, 4 1/2 to 5 inches long, during a fight or scuffle. There was evidence of malice, as will appear, and the victim died. The trial court did not err in overruling the motion for new trial.

It appears that on the evening preceding this event, a friend, George Greer, saw the victim with the defendant's wife and reported this fact to the defendant. On the evening in question, a party was in progress. Before the defendant arrived at the party, the victim had a fight with Greer due to Greer's having told the defendant about the victim and defendant's wife being together the night before.

The defendant testified as follows: that he had known the deceased Michael Daniels all his life and they were good friends; that he had fought with him once before and Daniels had "whipped" him; that he has about 45% disability in his right hand due to an industrial accident; that he was right-handed; that at about 11:30 p.m. on the night of April 20, 1973, he took George Greer to Chet's Lounge and dropped him off to get a beer; that Greer came back to the car and told him that his [the defendant's] wife was inside with Michael Daniels; that he went inside, found his wife sitting with Daniels, who had his arm around her; that he took his wife home and told her "if she wanted Mike, to go on around there and stay with him and don't come back to my house no more"; and that the next morning he got up and went to Daniels' house and told Daniels' grandmother, "I caught Michael and my wife

together last night and I don't want him round my house no more and plus I don't want him round my wife no more."

The defendant testified further that after he talked to Daniels' grandmother he came back to his house to put a new starter in his car; that in order to do this he used a wrench, a pair of pliers and "a little small knife" he got out of the kitchen; that when it became dark and he could no longer see to work he put the tools in his shirt pocket and went in the house to get something to eat; that his wife had not cooked anything so he decided to go to the party to get some sandwiches; that he did not go to the party intending to fight Daniels; that on the way there he met George Greer with his clothes torn and disheveled; and that he asked Greer what happened and Greer replied, "Well, Mike jumped on me and beat me up 'cause I told him your wife and him was together last night."

When he arrived at the party the appellant stated that he asked for two hamburgers and a Coca-Cola and went out in the yard to wait for them; that he saw Daniels and spoke to him about staying away from his house; that Daniels made a derogatory remark about his disabled hand; that Daniels "wasn't in his right mind" when drinking; that Daniels had been smoking marijuana; that two other people came up behind him, taunting him that they had their money on Daniels to whip him, "So I started walking and so they all gathered around me in one circle, so Mike kept on easing, you know, gradually coming up on me. 'Fore I knowed anything, he had picked me up over his head . . . and had pressure on my waist and stomach, squeezing and that's when I went in my pocket . . . He squeezed the breath out of me and I went in my pocket and I stuck him one time and I didn't stick him that bad, you know, to hurt him or nothing and about that time he staggered off and I slung back to the ground and I seen him running."

The defendant also testified that he was afraid the three men were going to gang up on him; that although he was right-handed, he used his left hand to reach in his pocket for a weapon to protect himself; that the knife was in the front when he reached in his pocket and he just pulled it out; that he held it in his left hand when he struck

Daniels with it; and that "when he grabbed me, I wasn't intentioned of hurting him or nothing, I only tried, you know to keep him from hurting me."

George Greer testified that after his fight with Daniels he met the defendant and returned to the party; that Daniels and appellant began "passing words," and "After they got through passing words, Mike tried to go up under Tony . . . Tried to grab his leg"; and that when Daniels "almost had him up in the air . . . that's when Tony stuck him."

In considering the overruling of the defendant's motion for new trial on the general grounds we have examined the transcript to see if there was evidence to support the verdict. There was.

In considering the enumerations of error based on the omission of instructions as to involuntary manslaughter, we examined the evidence to see if there was any evidence as to lack of intention to kill.

There are two types of involuntary manslaughter (Code Ann. § 26-1103), both involving the death of another human being "without any intention to do so." When a defendant on trial for murder admits the act but denies the intention to kill, Code Ann. § 26-1103 deserves special scrutiny. See *Howell v. State*, 123 Ga. App. 306 (1) (180 SE2d 599).

Code Ann. § 26-1103 (a) provides: "A person commits involuntary manslaughter in the commission of an unlawful act when he causes the death of another human being without any intention to do so, by the commission of an unlawful act other than a felony." A knife is a deadly weapon. Assault with a deadly weapon constitutes aggravated assault, a felony. Code Ann. § 26-1302. Aggravated battery is also a felony. Code Ann. § 26-1305. The unlawful act here in issue was not "other than a felony." The trial court did not err in not charging involuntary manslaughter in the commission of an unlawful act other than a felony. Code Ann. § 26-1103 (a) simply is not applicable to the facts of this case.

Code Ann. § 26-1103 (b) provides: "A person commits involuntary manslaughter in the commission of a lawful act in an unlawful manner when he causes the death of another human being, without any intention to do so, by

the commission of a lawful act in an unlawful manner likely to cause death or great bodily harm."

The defendant here urges that the "lawful act" was self-defense and that the "unlawful manner" was the use of unnecessary (excessive) force. Defendant cites *Warnack v. State,* 3 Ga. App. 590 (60 SE 288), in support of this contention.

The trial court instructed the jury extensively on self-defense, charging them, inter alia, at defendant's request as follows: "If he is honestly and reasonably in fear of death or serious bodily harm, he may stand his ground and use whatever force is reasonably necessary under the circumstances even to the extent of taking the life of the attacker. In considering the claim of self-defense you should bear in mind that a person is not entitled to use greater force than is necessary to repel the attack against him. However, when you evaluate the defendant's conduct, you should bear in mind the situation in which he found himself. A person who believes he is fighting for his life may properly use more force than would appear necessary to a detached observer of the event."

Having requested these instructions as to self-defense, having failed to request a charge as to the proper verdict in the event the jury found the defendant was defending himself but used more force than necessary, having failed to request a charge as to involuntary manslaughter in the commission of a lawful act in an unlawful manner, and having made no objection to the charge for failure to instruct the jury as to Code Ann. § 26-1103 (b), the defendant will not be heard to complain of the error asserted here.

The defendant's trial counsel requested and the court gave instructions as to self-defense, which requested instructions left open (the use of more force than necessary) the possible application of Code Ann. § 26-1103 (b). Now the defendant's counsel appointed for appeal complains that the court did not fill the gap in the instructions given at defendant's request.

We feel certain that if the defendant had requested a charge pursuant to Code Ann. § 26-1103 (b), the trial judge would have given it. The defendant did not do so, preferring instead to seek acquittal on the basis of

self-defense. Having failed in that effort, the defendant seeks a new trial on the ground that the trial court gave the instructions requested but did not fill the gap in the requested instructions.

A defendant will not be heard to complain that the trial court failed to give a complete charge to the jury where the incompleteness arose from instructions requested by the defendant and there was no request or objection by the defendant regarding such incompleteness. A defendant will not be allowed to induce an asserted error, sit silently hoping for acquittal, and obtain a new trial when that tactic fails. *Patterson v. State,* 233 Ga. 724 (7) (213 SE2d 612); *Joyner v. State,* 208 Ga. 435 (2) (67 SE2d 221).

*Judgment affirmed. All the Justices concur, except Gunter and Ingram, JJ., who concur in the judgment only.*

ARGUED MARCH 10, 1975 — DECIDED JUNE 2, 1975 — REHEARING DENIED JUNE 17, 1975.

*I. Burl Davis, Jr., Frank B. Lanneau, III,* for appellant.

*Fred M. Hasty, District Attorney, Walker P. Johnson, Assistant District Attorney, Arthur K. Bolton, Attorney General, B. Dean Grindle, Jr., Assistant Attorney General,* for appellee.