## 29954. TAMPLIN v. THE STATE.[*]

PER CURIAM.

This is a death case. The jury found Roland Tamplin guilty, on a three-count indictment, of murder with malice aforethought, felony murder and armed robbery. After the court instructed the jury that it could not impose sentences on both murder convictions, the jury imposed the death sentence for murder with malice aforethought, finding as aggravating circumstances that it was committed during commission of a capital felony, and imposed a life sentence on the armed robbery.

Defendant's motion for new trial was overruled and he appeals upon six enumerations of error: (1) that the verdict was contrary to the law and evidence; (2) that a key witness for the state gave incorrect testimony which was not corrected by the prosecutor; (3) that the trial court erred in not charging the jury, without request, that the testimony of accomplices should be viewed with caution; (4) that the trial court should have granted a mistrial on its own motion when, during sentencing argument, the prosecutor alluded to, and defense counsel thereafter commented upon, the possibility of parole in violation of Code Ann. § 27-2206; (5) that appointed trial counsel rendered ineffective assistance; and (6) that the death penalty is unconstitutional.

1. The verdict was not contrary to the law or the evidence, which was as follows: The defendant and Willie Raines were living in an apartment shared with Paula Carter and others. Defendant, Raines and Richard Daniel planned to rob the convenience food store where Paula Carter worked. She did not participate in the original plan. At the time of the robbery, Daniel was in the car and Raines was outside. Inside were the defendant, Paula Carter and the victim.

Paula Carter testified that the defendant hit the victim on the back of the head with the handle of a pistol, knocking him down, and that the defendant then shot the victim in the temple. Willie Raines testified that upon hearing the shot he entered the store and saw the defendant with the gun in his hand. The defendant and Raines took the money and met Daniel. Paula Carter

*Note: For further report of this case, see p. 774, post.

stayed at the store and at first gave a false report to police.

Upon returning to the apartment, the defendant told another occupant that he had killed a man. When Paula Carter returned to the apartment, she asked the defendant why he killed the man and he answered but did not claim that the gun went off accidentally. The defendant later admitted the killing to another occupant of the apartment, stating that he did not mean to do it.

In his subsequent confession to police, the defendant stated that the gun discharged when he hit the victim with it.

The medical examiner testified that the victim died as a result of a gunshot entering the head at the right eyebrow and that he had bruises at the back of the head. Other witnesses testified that the bullet removed from the victim was fired from a gun traced to the defendant. The defendant did not testify.

The evidence supports the verdicts.

2. Defendant contends that the key witness for the state gave false testimony which was not corrected by the prosecutor. On cross examination, Paula Carter was questioned as to a meeting with her attorney and an assistant district attorney regarding the charges against her and her testifying in this case, as follows: "Q. And were you promised that you would get a lesser sentence if you would testify against Roland? A. No, I did not. [The assistant district attorney] said he would recommend to the Judge that he would be lenient with me, and that I would not get a life sentence; if anything, I would get less time. Q. So, you were then, in effect, promised less time if you would testify? A. No, I was not promised anything. Q. But they told you that he would recommend to the Judge that you get less than a life sentence? A. Right, and that he would ask the judge to be lenient with me."

At the hearing on the motion for new trial, Paula Carter's attorney testified that the assistant district attorney had offered a recommendation of three years to serve if she testified for the state, that the matter had been presented to one judge of DeKalb Superior Court by counsel in the presence of the assistant district attorney, that the judge had declined to be committed to the recommendation but had stated that he would be inclined

to follow recommendations of the district attorney, and that Paula Carter had been informed of these matters, both outside and in the presence of the assistant district attorney, along with the advice that counsel felt certain the recommendation would be followed.

Defendant's counsel on appeal urges that under Giglio v. United States, 405 U. S. 150 (92 SC 763, 31 LE2d 104), Napue v. Illinois, 360 U. S. 264 (79 SC 1173, 3 LE2d 1217), and Moore v. Illinois, 408 U. S. 786 (92 SC 2562, 33 LE2d 706), it was the obligation of the assistant district attorney who tried this case to correct Paula Carter's incorrect testimony.

We disagree, for two reasons. First, the testimony was not false because, at the time of testifying, Paula Carter had not been promised she would get a three-year sentence. She had been informed that she would get a recommendation of a three-year sentence. No judge had sentenced her at that time or agreed that he would later sentence her to three years. Paula Carter admitted that the recommendation would be less than a life sentence. The fact that the recommendation would be three years did not come out during the trial.

Secondly, Giglio, Napue and Moore, supra, require that where a witness for the state testifies falsely, and that testimony is known to be false to the district attorney's office, and that testimony is not corrected, a new trial must be granted. In Giglio, the court said: "We do not, however, automatically require a new trial whenever 'a combing of the prosecutors' files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict . . .' " 405 U. S. 154.

Here the uncontradicted evidence is overwhelming that the defendant robbed and shot the deceased. At a minimum the defendant is guilty of felony murder, to which he confessed and as the jury found. The only variance between Paula Carter's testimony and the defendant's confession is whether the shooting was deliberate (malice murder) or occurred in the commission of a felony (felony murder). Under these circumstances the fact that the recommendation would be a sentence of three years would not likely have changed the verdict.

The trial court did not err in overruling the defendant's motion for new trial based upon newly discovered evidence as to Paula Carter.

3. The defendant contends that the trial court erred in failing to charge the jury, without request, that the testimony of accomplices should be viewed with caution.

Acknowledging that the rule in this state is contrary to his position, the defendant urges us to adopt Tillery v. United States, 411 F2d 644 (5th Cir.). In Tillery the court held that when the testimony of an accomplice comprises the total evidence against the accused and such evidence is shown to be unreliable if not incredible, it is "plain error" under Rule 52 (b), F. R. Crim. P., for the district court to fail to charge that the testimony of an accomplice should be received with caution and viewed with skepticism.

In the case before us there was testimony from two accomplices, three confessions by the defendant to police and others, and ballistics evidence. The testimony of the accomplices was not the total evidence against the defendant.

Moreover, federal courts allow a conviction on the uncorroborated testimony of an accomplice, if not incredible or unsubstantial on its face. Tillery, supra, 411 F2d 648. The rule in Georgia is that in felony cases the testimony of an accomplice must be corroborated. *West v. State,* 232 Ga. 861 (2) (209 SE2d 195); Code § 38-121.

Because of Georgia's requirement of corroboration, we decline to add to this requirement that where there is testimony from two accomplices, three separate confessions, and other evidence of guilt, the court must charge, without request, that the testimony of an accomplice should be received with caution and viewed with skepticism. See *Spear v. State,* 230 Ga. 74 (1) (195 SE2d 397); *Thomas v. State,* 234 Ga. 615.

We find this enumeration of error to be without merit.

4. Defendant contends that a mistrial should have been granted by the trial court on its own motion because of arguments made in the sentencing phase of the trial by the prosecutor and defense counsel.

After the jury found the defendant guilty, argument

of counsel was presented to the jury as to the sentences. The prosecutor asked for the death penalty, contending that this was not a murder committed in passion but was the shooting of a witness to the armed robbery. He argued that if such murders were not punished by death, robbers would kill the witnesses. Then he said: "In your own minds, I think you agree this murder warrants the death penalty. What if you gave this man a life sentence? He could kill again if you gave this man a life sentence. He could kill another prisoner. He could kill a prison guard. He could escape." Later he argued that defense counsel would say that taking the defendant's life will not restore life to the victim, and said: "Giving this man a death penalty will keep him from killing again. He can get life imprisonment and kill again. You know that. Life imprisonment is not that good."

Defendant contends that this argument by the prosecutor violated Code Ann. § 27-2206 which prohibits any attorney in a criminal case from arguing that, by reason of parole, the defendant may not be required to suffer the full penalty imposed by the jury.[1] Although the prosecutor's argument approaches the border of violating the spirit of the law, no reference was made to parole and defense counsel made no motion for the court to restrict the scope of argument.

Instead, defense counsel sought to refute the prosecutor's argument, saying: "I don't feel that by giving

---

[1]Code Ann. § 27-2206 reads: "No attorney at law in a criminal case shall argue to or in the presence of the jury that a defendant, if convicted, may not be required to suffer the full penalty imposed by the court or jury, because pardon, parole, or clemency of any nature may be granted by the Governor, State Board of Pardons and Paroles, or other proper authority vested with the right to grant clemency. If counsel for either side in a criminal case should so argue to the jury, opposing counsel shall have the right to immediately request the court to declare a mistrial; and in which case, it shall be mandatory upon the court to declare a mistrial; and upon failure so to do, same shall constitute reversible error."

this man a death sentence, that you are going to really accomplish this. But by giving him a life sentence, he is going to stay in jail for at least seven years. And to me, that would be about as bad as a death sentence. To be penned up in a prison for the next seven years, or possibly longer— it doesn't mean he will get out in seven years. It only means he will be eligible for parole in seven years. If he behaved himself and got time off for good behavior, he would be eligible for parole in seven years. If he did not, he would stay longer. And I would ask that you set his punishment at a life sentence . . ."

A defendant is not permitted to obtain reversal based upon an instruction to the jury given at the request of the defendant. *Patterson v. State,* 233 Ga. 724 (7) (213 SE2d 612). By the same token, a defendant is not permitted to refer to the possibility of parole in arguing to the jury, and later obtain a new trial based upon such argument, after an unfavorable verdict. Induced error is impermissible. See *Jackson v. State,* 234 Ga. 549, 553.

The trial court did not err in not declaring a mistrial on its own motion.

5. The defendant contends that appointed trial counsel rendered ineffective assistance in several particulars.

The defendant was represented by appointed counsel at trial. His appointed counsel on appeal contends that trial counsel rendered ineffective assistance as demonstrated by his argument to the jury as to sentencing (discussed above).

The right to effective counsel means counsel reasonably likely to render and rendering reasonably effective assistance, not errorless counsel and not counsel judged ineffective by hindsight. *Pitts v. Glass,* 231 Ga. 638 (203 SE2d 515).

Defendant's trial counsel was confronted by an argument made by the prosecutor which did not violate Code § 27-2206 (see above). Defense counsel decided that that argument should be answered on behalf of defendant. While another lawyer representing this defendant might have made a different argument, the fact that a different lawyer might have exercised different judgment does not require a finding that the defendant was denied the

effective assistance of counsel. *Pitts v. Glass,* supra.

Defendant urges other matters on appeal which he contends demonstrate ineffectiveness of trial counsel; e.g., the failure to request the charge, and failure to object to the charge, discussed in Division 3 of this opinion. We have considered the matters thus raised and do not consider that they, separately or collectively, demonstrate ineffective representation.

When a prosecutor, possessed with overwhelming evidence of guilt, insists upon a trial, defense counsel must attend. The effectiveness of counsel is not judged by the outcome of the case. *Pitts v. Glass,* supra. The trial transcript does not show ineffective representation by defense counsel.

6. Defendant contends that the statute under which the death penalty was imposed is unconstitutional. We addressed this issue in *Coley v. State,* 231 Ga. 829 (204 SE2d 612), and *House v. State,* 232 Ga. 140 (205 SE2d 217), and most recently in *Moore v. State,* 233 Ga. 861, 862 (213 SE2d 829). Urging that those decisions be overruled, defendant raises no new issue concerning the constitutionality of the Act not heretofore considered. We adhere to those decisions.

The constitutionality of the application of the death penalty to the defendant in the instant case has been determined upon sentence review pursuant to the above statute.

7. Sentence review: In our sentence review we have considered the aggravating circumstance found by the jury and the evidence concerning the crime introduced in court.

We have reviewed the sentence as required by Ga. L. 1973, p. 159 et seq. (Code Ann. § 27-2537 (c) (1-3)), as we did in *Coley v. State,* supra, and each subsequent case involving the death penalty under this statute. We conclude that the sentence of death imposed here was not imposed under the influence of passion, prejudice, or any other arbitrary factor. The evidence supports the jury's finding of statutory aggravating circumstances; i.e., that the offense of murder was committed while the defendant was engaged in another capital felony, to wit: armed robbery.

We have compared the evidence and sentence in this case with other similar cases contained in the appendix attached to this opinion.

The cases show that where witnesses to a robbery were killed or an attempt was made to kill such witnesses, the death penalty has been imposed.[2] Although the defendant in this case claimed the gun went off when he struck the victim, a witness who knew the defendant testified that after striking the victim with the gun, defendant very deliberately shot the victim in the head. This testimony was corroborated by the medical examiner who testified that the wound was not a contact wound and that in his opinion the gun was fired from a distance of 4 to 5 inches from the victim's head.

The cold-blooded and callous nature of the defendant in the commission of this crime was of the type condemned by death in other cases. His sentence to death for murder is not excessive or disproportionate to the penalty imposed in similar cases.

*Judgment affirmed. All the Justices concur, except Gunter and Hill, JJ., who dissent.*

ARGUED JULY 10, 1975 — DECIDED SEPTEMBER 11, 1975.

*Hendon, Egerton, Harrison, Glean & Kovacich, Michael J. Kovacich,* for appellant.

*Richard Bell, District Attorney, Edward H. Kellogg, Jr., Assistant District Attorney, Arthur K. Bolton, Attorney General, G. Stephen Parker, Assistant Attorney General,* for appellee.

HILL, Justice, dissenting.

I am unable to agree with Divisions 4 and 5 of the majority opinion. Clearly, defense trial counsel violated

---

[2]The cases also show that juries have imposed the death penalty for murder notwithstanding the absence of a prior criminal record. The fact that a co-indictee receives a lesser sentence is not ground for setting aside the death sentence imposed upon the actual killer.

the prohibition of Code Ann. § 27-2206, which is applicable equally to the defense as to the prosecution.

Conceding that defense counsel's argument was "inept tactical judgment," the state points out that there was no motion for mistrial. However, this is a death case. The sentence of death by the jury should be imposed free from passion, prejudice or other arbitrary factor. Code Ann. § 27-2537 (c) (1). This matter is reviewable notwithstanding the absence of a motion for mistrial. *Prevatte v. State*, 233 Ga. 929 (6) (214 SE2d 365).

In my view this argument to the jury by defense counsel that the defendant should be given a life sentence under which he would stay in jail at least seven years should be considered "shocking to the conscience of the reviewing court." See *Hart v. State*, 227 Ga. 171 (10) (179 SE2d 346). In my view, it was the duty of the trial court to observe this lack of competent representation and to correct it, by declaring defense trial counsel incompetent and on that basis declaring a mistrial as to sentencing.

The state has argued that this result would place it within the power of the defense counsel to secure a mistrial, and has contended that such a decision would encourage calculated ineffectiveness of counsel. Basing this decision not upon Code Ann. § 27-2206 but upon incompetence of counsel in light of that Code section, I would not foresee many attorneys intentionally causing mistrials by this means. If such intentional incompetence became a problem, the trial courts could hold such attorneys in contempt pursuant to Code Ann. § 24-3319.

In my view, a new trial on the issue of punishment should be granted for the reasons stated above. I therefore dissent.

## Appendix

Similar cases considered by the court; *Lingo v. State,* 226 Ga. 496 (175 SE2d 657); *Johnson v. State,* 226 Ga. 511 (175 SE2d 840); *Pass v. State,* 227 Ga. 730 (182 SE2d 779); *Callahan v. State,* 229 Ga. 737 (194 SE2d 431); *Whitlock v. State,* 230 Ga. 700 (198 SE2d 865); *Kramer v. State,* 230 Ga. 855 (199 SE2d 805); *Bennett v. State,* 231 Ga. 458 (202 SE2d 99); *Howard v. State,* 231 Ga. 186 (200 SE2d 755); *Hunter v. State,* 231 Ga. 494 (202 SE2d 441); *Morgan v.*

*State,* 231 Ga. 280 (201 SE2d 468); *House v. State,* 232 Ga. 140 (205 SE2d 217); *Morgan v. State,* 233 Ga. 360 (211 SE2d 285); *Gregg v. State,* 233 Ga. 117 (210 SE2d 659); *Floyd v. State,* 233 Ga. 280 (210 SE2d 810); *Moore v. State,* 233 Ga. 861 (213 SE2d 829); *Mitchell v. State,* 234 Ga. 160 (214 SE2d 900).