## 51899. GALE v. THE STATE.

DEEN, Presiding Judge.

1. A charge of the court which might "impress upon an obstinate juror never to yield to the argument or reasoning of his fellow-jurors" is improper. *Maddox v. State,* 233 Ga. 874 (2) (213 SE2d 654). A question directed by an attorney to jurors on voir dire, slanted to elicit the answer that they would "never compromise your opinion even though eleven members of a jury will try to convince you otherwise" was properly disallowed on objection for the same reason. The sustaining of the objection was not ground for a mistrial as contended.

2. The defendant never denied that he shot and killed one Amerson, with whom he believed his wife to be in love, in a restaurant where she was an employee. Several eyewitnesses testified, as did Gale, with the result that various discrepancies emerged, but it was

established that Gale's wife and Amerson were at a table in the back of the restaurant when the defendant entered, and that he approached the table. Which man first hit the other is disputed. They then grappled to the floor with Amerson on top. Amerson, in military uniform, had a pistol in a holster in his belt; the defendant was unarmed. Two shots were fired while the contestants were prone, then Gale stood up, Amerson's pistol in his hand, and continued to fire until the chamber was empty. Immediately thereafter a justice of the peace whose office was by coincidence immediately across from the restaurant, and who in fact later signed the arrest warrant, entered and asked generally what had happened. On being told Amerson was dead, he cried out: "For God's sake, who killed him?" and the defendant spoke up saying, "I did." Testimony to this effect was given by the justice of the peace and objected to on the grounds (a) that the witness' name was not on the list of witnesses furnished to defense counsel, and (b) that he was a law enforcement official and had elicited the information without first informing the defendant of his Miranda rights. As to the first objection, the prosecuting attorney stated in his place "that I first became aware of the information that this witness had this morning at approximately 9:00 o'clock," thus meeting the requirements of Code § 27-1403. *Mitchell v. State,* 226 Ga. 450 (3) (175 SE2d 545). As to the latter objection, the defendant's statement was not in response to any interrogation directed at himself. It came within a couple of minutes of the time he fired the pistol in full view of everyone in the room. Had the witness been any private citizen, the court's ruling that the statement was a part of the res gestae would doubtless go unchallenged, and the mere fact that the newcomer was in fact a legal official who later issued an arrest warrant is not shown to have the slightest bearing on the chain of events. The testimony was properly admitted.

3. The defendant's wife, Karen, was not in the state at the time of his trial. The defense offered another witness who testified that she had spent the day following the shooting with Karen, who had talked about her relationship with her husband and the victim. The

defense further expected the witness to testify that Karen had told her she spent the night prior to the shooting with the deceased; this was objected to and correctly excluded as hearsay. The defendant appears to urge that such testimony is admissible from necessity under Code § 38-302 to show motive and explain conduct. In this case the conduct belongs to the absent witness, the motive to the defendant, and neither to the witness testifying. The issue is not whether Karen Gale had committed adultery but whether the defendant thought she had; his testimony alone could establish this. Its credibility might be bolstered by the wife's testimony that she had admitted as much to him before the homicide, but not that she had admitted it to another person afterward. There is therefore no true "necessity" for such testimony, but in any event necessity is not enough to justify hearsay. "The two underlying reasons for any exception to the hearsay rule are a necessity for the exception *and a circumstantial guaranty of the trustworthiness of the offered evidence — that is, there must be something present which the law considers a substitute for the oath of the declarant and his cross examination by the party against whom the hearsay is offered.*" *Chrysler Motors Corp. v. Davis,* 226 Ga. 221, 224 (173 SE2d 691) quoting from 29 AmJur2d 554, Evidence, § 496. As observed (p. 225) the rule which renders self-serving statements inadmissible is the same in criminal prosecutions as in civil actions. The same applies to the statement here. No substitute can be offered for the absent oath or the impossibility of cross examination.

4. The defendant testified that he reached over a table at Amerson, Amerson hit him with a sugar canister, the men grappled and went down with Amerson on top, Amerson leaned back and put his hand on the gun in his belt holster, the defendant grabbed the top of his wrist; Amerson held the gun during the first two shots which went off in the holster; it then fell on the defendant's chest, he retrieved it, and he does not remember then standing over Amerson firing into his chest. Part of a statement signed by the defendant was then read to him for purposes of impeachment as follows: "Q. How did the gun get involved in it? A. I reached for it."

To this the defendant responded: "I probably said that in there, I don't know, because what I said on the tape. . .I said a lot of things on the tape because we talked for forty-five minutes to an hour."

The state did not and apparently due to certain defects could not introduce the entire statement into evidence. The defendant, however, admitted that although it was only a partial transcript of an interview the tape of which had been destroyed, he had read, corrected, and signed the statement. Whether or not it was in fact inadmissible, it was not offered in evidence by either side. On the other hand, it was shown to the defendant, he acknowledged its general truth and his signature, and did not deny he had made the statements attributed to him. Under these circumstances, and assuming in favor of the defendant's position that the document as such was not admissible, we do not think its use for purposes of impeachment reversible error. The provisions of Code § 38-1803 were complied with. The statement contradicted testimony that Gale reached only for the victim's wrist, not his weapon, and bears on the question of his intent at the time of both the original and subsequent shots. We held in *Hancock v. State,* 131 Ga. App. 485 (2) (206 SE2d 104) that statements made by the defendant without prior Miranda warnings would be admissible for the limited purpose of impeachment through proof of contradictory statements. In so ruling *Hancock* is in accord with Harris v. New York, 401 U. S. 222, 226 (91 SC 643, 28 LE2d 1). The Supreme Court again considered the question in Oregon v. Hass, 420 U. S. 714 (95 SC 1215, 43 LE2d 570), a case where the Miranda warnings were properly given but where certain information was elicited *after* the defendant had stated that he wished to telephone his lawyer. The court again held that the defect rendered the incriminating statements inadmissible as to the case in chief, but that they might be used for purposes of impeachment because the "shield provided by Miranda cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances." The Harris and Hass cases make it abundantly clear that where statements of a defendant suffer from a defect, such

as failure to give Miranda warnings or failure to abide by their imperatives, the admission or confession *cannot* be admitted in evidence by the state as part of its case in chief; this will not, however, prevent their admission for *impeachment purposes only* when contradictory to sworn testimony of the defendant on the stand. In *Campbell v. State,* 231 Ga. 69, 71 (200 SE2d 690) the court again admitted rebuttal evidence to impeach a statement made by the defendant, pointing out, however that it was for this purpose only, and that, without the restrictive charge "reversible error might well have been committed," citing *Colbert v. State,* 124 Ga. App. 283, 285 (183 SE2d 476). *Colbert* states that "where inadmissible evidence as to a confession is offered and admitted, its admission constitutes reversible error, unless the jury is expressly instructed that the evidence is admitted for the purpose of impeachment only, whether or not a request to so charge is made, and whether or not any exceptions are made to the charge as given." See also *LaRue v. State,* 137 Ga. App. 762.

The failure of the court to caution the jury that the excerpts from the apparently inadmissible confession statement which were read to the defendant and which conflicted with his sworn testimony might be considered by them only as bearing on his credibility, and for purposes of impeachment, was harmful error requiring the grant of a new trial.

5. Various requests to charge were denied by the trial court. Some of them were subject to the defect pointed out in United States v. Wayman, 510 F2d 1020, 1027: "Although a defendant is entitled to have the theory of his defense charged to the jury, he is not entitled to have the judge recite all the facts supporting the defense while pointedly ignoring those facts adverse to his position." As to the first request, the presumption of innocence was properly charged; the court should also on request have stated that "the indictment in this case is not evidence of any facts charged therein." The requested language defining corpus delicti is somewhat argumentative; we adhere to the definition set out in *Langston v. State,* 151 Ga. 388, 390 (106 SE 903). The instructions on self-defense and justifiable homicide were sufficient. See

*State v. McNeill,* 234 Ga. 696, 697 (217 SE2d 281), where, as to a like affirmative defense (entrapment) the Supreme Court held: "The jury was fully apprised of the state's burden of proof in this case and it was not error to fail to specifically charge the jury that the state had the burden of proving that the defendant was not entrapped." A proper instruction might be to the effect that if the jury believed the death was either justifiable homicide as defined or due to accident, or if it entertained a reasonable doubt of his guilt based on either of these defenses, it should acquit.

6. There is ample evidence to justify a conviction of felonious homicide. Since the defendant himself requested that the lowest grade, involuntary manslaughter, be charged, he cannot now complain that this was not an included crime under the evidence in the case. A "ground which complains of that part of the charge which stated the law requested by the defendant. . .is necessarily without merit." *Freedman v. Petty,* 93 Ga. App. 590, 592 (92 SE2d 588).

*Judgment reversed. Quillian and Webb, JJ., concur.*

ARGUED MARCH 2, 1976 — DECIDED MARCH 15, 1976 — REHEARING DENIED MARCH 30, 1976 —

*Hutto & Palmatary, Cletus W. Bergen, II,* for appellant.

*John W. Underwood, District Attorney, Dupont Cheney, Assistant District Attorney,* for appellee.