## 55185. CONLEY v. THE STATE.

SMITH, Judge.

Charles Conley and Raymond McDonald were jointly tried for the murder of Willie Boone, Jr. They presented no evidence. McDonald was convicted of murder and given a life sentence. Conley was convicted of voluntary manslaughter and given a twelve-year sentence.

The state contended that the homicide of Boone was the result of a conspiracy between Conley and McDonald. Conley assigns six enumerations of error. Only the first and sixth need to be dealt with in disposing of this case. The first contends that "the evidence is insufficient to support the verdict" and the sixth that "the court erred in allowing the jury to return repugnant verdicts for the same offense, murder [McDonald] and voluntary manslaughter" [Conley]. We reverse.

1. Conley's contention that the verdict of murder as to McDonald and voluntary manslaughter as to him are repugnant verdicts is without merit, *Smith v. State,* 142 Ga. App. 810, 812 (237 SE2d 216) (1977) (Judge McMurray dissenting), to the contrary notwithstanding. The Supreme Court in *McDonald v. State,* 241 Ga. 112 (243 SE2d 53) (1978), in affirming McDonald's murder conviction, held that the verdicts were not repugnant,

citing 95 ALR2d 177, 189; and *Brown v. State,* 28 Ga. 199 (1859).

2. However, Conley's contention that the evidence is insufficient to support his conviction of voluntary manslaughter *is* meritorious. The state based its case upon a charge that Conley and McDonald conspired to bring about the murder of Boone. The jury did not believe the state had carried the burden of proving the conspiracy, inasmuch as it convicted Conley of voluntary manslaughter, not murder. The state spent its entire effort on proving a conspiracy to murder Boone. There was no attempt to prove a conspiracy to commit voluntary manslaughter. Perhaps the reason was two-fold: First, there was no evidence to support a voluntary manslaughter verdict; second, one simply cannot conspire to kill another in the heat of passion. We must now examine the evidence to determine if Conley was guilty of killing Boone in the manner proscribed by Code § 26-1102. This section provides, "A person commits voluntary manslaughter when he causes the death of another human being, under circumstances which would otherwise be murder, if he acted *solely* as the result of a *sudden, violent* and *irresistible passion resulting from serious provocation* sufficient to excite such passion in a reasonable person . . ." (Emphasis supplied.)

On the night of April 16, 1976, Charles Conley rode with Raymond McDonald in McDonald's truck to the store owned and operated by Willie (Junior) Boone. Prior to arrival, two of Boone's close friends, Harris Malloy and William Marchant, came by, arriving at approximately 9 p.m. Malloy and Marchant stayed a few minutes then left and were gone about 45 minutes. Upon returning to the Boone store, they noticed two men on the outside. Malloy spoke to them as he and Marchant entered the store. Upon entering the store Boone handed Malloy a .25 caliber automatic pistol. As Boone handed him the pistol the two men that were on the outside entered the store. As they entered Boone greeted them by saying "go on I don't want no trouble." He repeated this several times as the two men (McDonald and Conley) walked up to the counter behind which Boone was standing and leaned on the counter with their hands. Neither McDonald nor Conley said anything.

After Boone handed Malloy the .25 caliber automatic, Boone reached under the counter and got a .38 revolver. He held this gun in his hand down by his side. McDonald started to move one of his hands and Boone told him not to do that. As Boone said this he (Boone) placed the .38 caliber pistol on the counter and pulled a 30-30 automatic rifle from under the counter and held it in a more or less menacing manner and told McDonald and Conley to leave. When Boone placed the .38 pistol on the counter Malloy handed the .25 automatic to Marchant and picked up the .38 pistol. When Boone pulled the rifle and told McDonald and Conley to leave, they started backing toward the front door. As they were backing away McDonald said, "Alright, we'll see you, Mr. Boone." As they neared the front door two people were coming in and McDonald said, "Come on in." McDonald went out the front door as the two people (Buddy Man and Dee) were entering. Conley in the meantime backed in between the milk counter and bread counter directly in front of Boone. As Buddy Man and Dee crossed between Boone and McDonald, and as McDonald backed out the door, Boone shouted, "Get out of the way, Buddy Man." When he shouted this, Buddy Man and Dee took off running toward the back of the store. Boone was still behind the counter holding the rifle in the general direction of the door; Malloy was toward the end of the counter with the .38 pistol; Marchant was in the back of the store with the .25 automatic; and Conley was still between the milk and bread counters as McDonald stepped out the door and the two people ran toward the rear of the store.

After McDonald stepped out of the front door and was on the porch, he turned, and shot through the open door, striking Boone in the chest. As Boone staggered backwards and fell he fired the automatic rifle several times as McDonald attempted another shot through the store window. When the firing of guns began Marchant, Buddy Man and Dee went out the back door of the store into an enclosed passageway that connected the store and living quarters; Conley squatted down between the bread and milk counters; and Malloy got behind the freezer locker. Immediately after the shooting ceased, Conley pushed the wooden front door closed leaving him on the

inside of the store along with Malloy, Marchant and Boone. Marchant yelled to Malloy to keep down, that one of them (McDonald or Conley) was still in the store. Malloy started hollering at Conley to get out and when he did Conley said, "Don't shoot me, don't shoot me, I'm just a second." When he said this Malloy fired one shot from the .38 pistol into the ceiling, and when he did this Conley yelled, "Don't shoot me," and ran out of the store. Within minutes, he and McDonald left in McDonald's truck. Shortly thereafter and several miles away Conley tried unsuccessfully to buy a pistol.

When the shooting was over Marchant heard a loud knocking on the door that opened into the yard in back of the store. This door was in the enclosed passageway leading from the store to the living quarters. The person was shouting to open the door, that she was Boone's wife. When Marchant opened this door a lady came in. No one knew where she had been before or during the shooting. When she saw what had happened she became hysterical. No one knew who she was, but she was later identified as Mrs. Christine McDonald, the wife of Raymond McDonald. Only Marchant had seen her before; he stated he had seen her at Boone's store two or three times in the past two months. Also, none of the witnesses in the store immediately before and during the shooting knew McDonald or Conley. One person on the outside, but who never came into the store, recognized Conley as a man he had worked with a short while sometime prior to this incident. At least three witnesses who were on the outside stated that McDonald while outside the door on the porch and immediately before he shot Boone, had the handle of a pistol sticking out of his side pocket. This was after McDonald had been in the store and backed out. No one *in the store* ever saw a pistol or any other type weapon in the hands of or on the person of McDonald or Conley while they were in the store. Nor did anyone ever see a weapon of any kind or nature at anytime in Conley's hands or on his person.

"When a homicide is neither justifiable nor malicious, it is manslaughter, and if intentional, it is voluntary manslaughter." *Starr v. State,* 134 Ga. App. 149 (213 SE2d 531) (1975) and cits. Insofar as Conley is

concerned the jury determined that the killing of Boone was not malicious. This disposes of the state's contention that a conspiracy to murder Boone existed between Conley and McDonald. Certainly there could not be a conspiracy between Conley and McDonald for McDonald to murder Boone and Conley to commit voluntary manslaughter. One cannot conspire to kill in the *heat of passion*. Voluntary manslaughter is the result of one causing the death of another, "acting solely 'as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person,' the gravamen of the crime of voluntary manslaughter." *Beckman v. State,* 134 Ga. App. 118 (213 SE2d 527) (1975) and cits.

There is simply not sufficient evidence to support a jury conviction of Conley of voluntary manslaughter. The state used fifteen lines and cited no authority in its brief in attempting to refute Conley's first enumeration of error; that is, that the evidence was insufficient to support the verdict as to him. In its brief the state contends that the "evidence was more than sufficient to establish a conspiracy between the defendants (Conley and McDonald) which involved the appellant in the homicide of Willie Boone." However, it is interesting to note that the state did not cite any portion of the transcript which it claims supports its contention that a conspiracy existed between Conley and McDonald; nor did it cite any portion of the transcript that supports its contention that Conley committed the offense of voluntary manslaughter. Conley and McDonald came into the store knowing that two other men were in there and the further fact that they saw all three of them armed blunts any conspiracy-to-murder argument. If they had planned to kill Boone they would not have planned to do so in the presence of witnesses. Additionally Conley did not say or do anything before, during, or after the shooting that would indicate that he had any malice toward Boone.

The fact that Conley closed the door — leaving him unarmed inside with three armed men — is strong evidence that McDonald was acting on his own and that his actions caught Conley by surprise. This action on Conley's part does much to negate the idea that he came

there with an intent to kill Boone; would not a man with murder on his mind arrange a route of escape? Would a man anticipating a gun battle leave himself in a position to be trapped, unarmed, in a small room with his armed opponents?

Conley did not immediately flee the store; he left only after Malloy (Boone's friend) ordered him to leave and punctuated the order by firing a shot overhead. His "flight" was justified under these circumstances. Also, his attempt to buy a gun *after* the shooting suggests that he had no gun before the shooting. It does nothing to prove that he had formed any plan or intent prior to the shooting. The existence of *McDonald's* malice may be inferred from McDonald's act of firing the gun. But McDonald's act imputes no state of mind to Conley, and to say that Conley under the circumstances in this case "participated to a less culpable degree and his guilt was less obvious to the jury" is simply contrary to the evidence.

Because McDonald did the shooting and Conley had no gun, the conviction here must be founded on proof of a conspiracy between Conley and McDonald. The state attempts to hang its conspiracy theory primarily on the circumstance that McDonald's wife, and Boone's alleged consort, was also Conley's sister. We note that references to Mrs. Catherine McDonald appear in the transcript of evidence at nine different places. Even though the order of the trial judge denying the motion for a new trial and the Supreme Court's opinion in the *McDonald* case, supra, referred to Mrs. Catherine McDonald as being Conley's sister, we have been unable to find such evidence in the transcript.

The evidence presented in this case does not sustain the state's allegation of a conspiracy; therefore, anything less than a complete acquittal of Conley was not authorized. Conley's request of a charge on voluntary manslaughter does not alter the fact that the state must prove by competent evidence that Conley committed the crime as charged.

"An indisputable tenet of our American system of criminal justice is that a person accused is presumed innocent until the state proves his or her guilt beyond a

reasonable doubt." *Little v. State,* 237 Ga. 391, 393 (228 SE2d 801) (1976). "[I]n *every* criminal case this presumption can be overcome *only* by legal evidence." *McClurg v. State,* 2 Ga. App. 624, 626 (1907). (Emphasis supplied.) How, then, can an accused person waive this requirement? Either the state has proved guilt with competent evidence, or the presumption of innocence remains.

To allow a conviction to stand where there is no evidence to uphold the verdict goes contrary to justice.

The dissent would affirm the conviction of voluntary manslaughter on the basis that Conley requested the charge on voluntary manslaughter and, because the jury convicted him of this crime, he cannot now complain that the evidence was insufficient to support the conviction. By requesting the charge on voluntary manslaughter, Conley did not waive his presumption of innocence, nor did he relieve the state of the necessity of proving the commission of the crime as charged.

The evidence presented here by the state did not authorize a conviction of murder. Therefore, the conviction of voluntary manslaughter is reversed because the evidence is insufficient to support the verdict.

*Judgment reversed. Bell, C. J., Quillian, P. J., Webb, Shulman and Birdsong, JJ., concur. Deen, P. J., McMurray and Banke, JJ., dissent.*

SUBMITTED FEBRUARY 1, 1978 — DECIDED JULY 14, 1978.

*William T. Straughan,* for appellant.
*Phillip R. West, District Attorney, James L. Wiggins, Assistant District Attorney,* for appellee.

BANKE, Judge, dissenting.
I respectfully dissent.

The crux of this case is that the defendant Conley *requested* a charge on voluntary manslaughter, was convicted therefor, and now complains that the evidence did not authorize the conviction. While recognizing the rule that it is ordinarily error for a trial judge to give in charge to the jury a principle of law that has no

application to the issues, we must also give effect to the principle that where a movant has requested the trial court to give a certain charge, and it is given, he cannot later complain that the charge was harmful to him. *Coleman v. State,* 141 Ga. 737 (4) (82 SE 227); *Meyers v. State,* 169 Ga. 468, 479 (151 SE 34); *Smith v. State,* 202 Ga. 851, 865 (45 SE2d 267); *Jackson v. State,* 234 Ga. 549, 553 (216 SE2d 834); *Tamplin v. State,* 235 Ga. 20, 25 (218 SE2d 779). It has been held that where a particular charge is requested, reversible error cannot flow from its use even though the requested charge may have the effect of waiving basic constitutional guarantees. *Patterson v. State,* 233 Ga. 724 (7), 731 (213 SE2d 612) (1975). "Since the defendant himself requested that the lowest grade, involuntary manslaughter, be charged, he cannot now complain that this was not an included crime under the evidence in the case." *Gale v. State,* 138 Ga. App. 261, 266 (226 SE2d 264) (1976).

The courts early recognized the need for this principle of law and have steadfastly adhered to its application. To do otherwise would permit an ingenious attorney to persuade the trial judge to give a charge on a lesser included offense for which there was no evidence and then obtain a conviction on that offense by tacitly admitting to it before the jury while arguing vehemently against the superior offense charged. The defendant could then obtain a reversal of the conviction on the lesser charge due to lack of evidence. To permit such a situation would be inconsonant with justice and should not be permitted.

I would affirm the conviction.

I am authorized to state that Presiding Judge Deen and Judge McMurray join in this dissent.