## 38218. THE STATE v. CLAY.

CLARKE, Justice.

Frances Clay was indicted and tried for the murder of her husband. She was convicted of voluntary manslaughter. The Court of Appeals reversed, holding the evidence was insufficient to support a conviction for voluntary manslaughter. We granted certiorari to address the issue of whether a conviction of a lesser included offense may be reversed on the general grounds when the defendant requested a charge on that offense.

1. The dilemma presented by this case is the result of the difference in the standard used by the trial court in charging a particular offense to the jury and the standard used by an appellate court in reviewing the verdict. In *State v. Stonaker,* 236 Ga. 1 (222 SE2d 354) (1976), we held that if the accused made a request to charge on a lesser offense included in the crime charged in the indictment it is error for the court to fail to so charge where the evidence warrants such a charge. In murder trials we have held that where *slight* evidence of voluntary manslaughter is presented the court in its discretion may charge on that offense, see *Morgan v. State,* 240 Ga. 845 (242 SE2d 611) (1978), and that if the accused requests such a charge it should be given where there is *slight* evidence of voluntary manslaughter. *Gillespie v. State,* 236 Ga. 845 (225 SE2d 296) (1976); *Henderson v. State,* 234 Ga. 827 (218 SE2d 612) (1975).

The appellate courts, in reviewing the evidence necessary to sustain a conviction, are bound by the standard of Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Prior to Jackson v. Virginia the test on appeal for sufficiency of evidence was whether there was "any evidence to support the verdict of guilty." *Eubanks v. State,* 240 Ga. 544 (242 SE2d 41) (1978). The standard set forth in Jackson v. Virginia is ". . . whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, supra at 319.

We agree with the state's contention that the Jackson standard and the slight evidence standard require different degrees of evidence. We do not agree that the two rules may not coexist. However, the opinion of the Court of Appeals in the present case presents a hole in the criminal trial process. The hole is the escape route for the defendant in a case where the evidence of the more serious crime satisfies the Jackson standard while the evidence of the lesser offense on which a charge is requested satisfies the slight evidence standard and the defendant is convicted of the lesser

offense.

One solution to the problem would be to apply the Jackson v. Virginia standard to requests to charge. We do not believe this is appropriate. Jackson established a standard for review, and on review the court has the opportunity to deliberately study the record in order to determine whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. The trial court is not blessed with this luxury. Its decision of a request to charge must be based upon and adjusted to the evidence, but the burden of determining the conclusive weight of the evidence at that point of the trial would be too great.

In the present case the Court of Appeals found insufficient evidence to support a conviction of voluntary manslaughter, there being no evidence of provocation resulting in a sudden and irresistible passion. Their holding that a defendant's request to charge does not relieve the state from proving the commission of the crime is based upon the decision in *Conley v. State,* 146 Ga. App. 739 (247 SE2d 562) (1978). Conley was indicted and tried for murder and convicted of voluntary manslaughter. The defense had made a request to charge on that offense. The Court of Appeals on review held that there was no evidence of voluntary manslaughter and reversed the conviction because the evidence did not authorize a conviction of *murder* as charged in the indictment. We agree that if the state's evidence fails to prove the crime charged in the indictment or a lesser included offense, the conviction must be reversed.

We hold that if the evidence supports a verdict of guilty in the more serious offense, and if there is slight evidence of the lesser included offense, a defendant who requests a charge on and is convicted of the lesser offense may not successfully urge the general grounds on appeal. We do not depart from the proposition that the state must prove commission of the offense charged beyond a reasonable doubt, but we conclude that when this burden is met and a defendant affirmatively requests a charge of a lesser included offense, he presents to the jury a choice of verdicts.

The Court of Appeals did not determine if the jury would have been authorized to convict Mrs. Clay of murder under the evidence presented at the trial. Once the lesser included offense is ruled out on the evidence, the appellate court must focus on whether there was sufficient evidence to authorize a conviction of the indicted offense.

Mrs. Clay and the victim, Lamar Clay, had been married several weeks. The evidence showed that on the night of the shooting both of them were highly intoxicated. Mrs. Clay and her husband were at home alone. She had been arrested earlier in the day on a drunk driving charge and Mr. Clay had bailed her out of jail that evening.

Mrs. Clay called the sheriff's office around 2:30 a.m. to report the shooting. Mr. Clay was found dead on the bedroom floor. Death was caused by a single gunshot wound in the neck which had severed an artery, causing him to bleed to death.

The principal witnesses for the state were employees of the state crime laboratory and the GBI. Tests showed the fatal bullet was fired from a .22 caliber rifle which was kept in the Clay home. In the opinion of the investigators the victim was on the bed when the shot was fired. There were two bullets found in the wall of the bedroom; one was below the surface of the bed, and the one which caused the death of the victim was approximately thirty-seven inches from the floor and thirteen and one-half inches above the surface of the bed. There was evidence that the second bullet was possibly from the same gun but no evidence as to when it was fired. Only one spent cartridge was found at the scene. It was the opinion of the expert that the gun barrel would have to be at least a foot from the entrance wound on discharge to produce the type of powder particles found on the victim. It was the opinion of one expert that the victim was not sitting on the bed or lying flat on the bed but was in a position in between.

The officer who first arrived on the scene testified that Mrs. Clay was intoxicated and upset. He stated that she told him she was in the kitchen drinking when she heard the gunshot and went to the bedroom where she found her husband in a pool of blood on the floor. At a later time she told another investigator that she could not remember anything that happened that night. On another day she told an investigator that the gun may have gone off as she tried to take it away from him but she could not say for sure. At trial she testified that she was home, but heard no shot and could remember that she did not kill her husband.

The victim's daughter, Vicky Bryan, who lived about a half mile from the Clays' home was also a witness for the state. She testified that on the night her father died Mrs. Clay came to her home between midnight and 1:00 a.m. in an intoxicated state. She testified that Mrs. Clay stated that her father had the rifle and was trying to kill himself. Mrs. Bryan told Mrs. Clay she would come to their house in the morning; she testified that she thought Mrs. Clay was just making up an excuse to get Mr. Bryan and herself to come to the house. When asked if her mother-in-law appeared agitated she replied, "some" but said Mrs. Clay said she and her husband had not been fighting and it did not appear to Mrs. Bryan that there was any serious problem. She asked Mrs. Clay to leave. She testified that Mrs. Clay left stating, "I'm tired of putting up with this, and when I get back, I'll put a stop to it."

In her statements to investigators, Mrs. Clay denied going to

Mrs. Bryan's home. She also denied this visit at trial.

Mrs. Clay testified in her own behalf. She told of how depressed her husband had been over problems with his family. She stated he was taking nerve pills and asked her to maintain the house and raise his son if anything ever happened to him. The defense theory was that Mr. Clay had shot himself with the rifle. She testified that he went to lie down on the bed and when she went in later to join him he had the rifle. She stated she reached over to take it and he said "no" so she got up and went to another room where she listened to the radio and drank some more. At some point when she went back into the bedroom she found her husband lying on the floor and became hysterical. She stated that things were tumbling in her mind, she was upset and could not remember what she initially told the officers who arrived on the scene. She explained that if there were inconsistencies it was due to alcohol and the shock of finding her husband.

Mrs. Clay further maintained that she never touched her husband or the gun after she found him on the floor. The sheriff testified that the body had fallen to the floor face down and pulled the sheet off of the bed. The sheet was under the body; the rifle was lying across his leg with the barrel pointed toward the feet. In the opinion of the sheriff it could not have fallen in that manner if the wound was self-inflicted. This evidence, together with the expert testimony that the barrel would have had to be at least a foot from the body when fired negated the defense theory of suicide sufficiently for the jury to believe that Mrs. Clay in fact shot her husband; the circumstances could also support the finding of the jury that she did so intentionally. A rational trier of fact could have found that Mrs. Clay was guilty of murder beyond a reasonable doubt. Jackson v. Virginia, supra.

Since there was sufficient evidence to support a conviction of murder, under our holding in this case Mrs. Clay may not successfully contend that the evidence does not support her conviction because she affirmatively offered the alternative theory of voluntary manslaughter to the jury.

2. Appellant's remaining enumerations of error deal with the failure of the trial court to admit the results of a polygraph test and hand-wiping gun powder residue tests made on Mrs. Clay.

There was no pre-trial stipulation to the polygraph results, and under these circumstances it is not error for the trial court to exclude the evidence. *State v. Chambers,* 240 Ga. 76 (239 SE2d 324) (1977).

Gun powder residue test wipings were made from the hands of both Mrs. Clay and the victim. The state did not introduce the results of these tests. Defense counsel sought to ask the sheriff the test results on cross examination. The sheriff testified that he did not know, since the tests were made by personnel connected with the

state crime laboratory. The court ruled that the test results could be admitted when and if a proper foundation was made with an expert from the crime lab. No other showing on this issue was made by either side of the case and there was no error in excluding the tests.

The judgment of the Court of Appeals is reversed as we find no grounds for setting aside the conviction for voluntary manslaughter.

*Judgment reversed. All the Justices concur.*

DECIDED APRIL 7, 1982.

*Arthur E. Mallory III, District Attorney, Gerald S. Stovall, Assistant District Attorney,* for appellant.
*Vernon Belcher,* for appellee.