A04A0149. NEWMAN v. THE STATE.
(599 SE2d 203)

MIKELL, Judge.

After a bench trial in Decatur County Superior Court, Becky Michelle Newman was convicted of burglary and sentenced to ten years to serve on probation. On appeal, Newman challenges the sufficiency of the evidence. We affirm.

Where the sufficiency of the evidence is questioned on appeal, we determine "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[1] As an appellate court, we do not weigh the evidence or assess witness credibility.[2]

Reviewed in the light most favorable to the prosecution, the evidence shows that on October 29, 2002, Stephanie Reynolds returned home to find her front door kicked in and several items taken from her residence, including a Sharp 31-inch television, two CD players and some CDs, and a stereo. Reynolds called 911. Reynolds also testified that the front door was not secure and that anyone who knew the condition of the door could open it by applying some force.

Corporal Deputy Rick Ashley of the Decatur County Sheriff's Office responded to Reynolds' 911 call. Corporal Ashley testified that he observed that Reynolds' door had been forcibly opened; that she described the items that had been taken; that he photographed the damaged front door and the entertainment center from which the

---

[3] Id. at 578. See also *Thornton v. State*, 180 Ga. App. 274, 275 (349 SE2d 23) (1986).
[1] (Punctuation and emphasis omitted.) *State v. Clay*, 249 Ga. 250 (1) (290 SE2d 84) (1982), citing *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SC 2781, 61 LE2d 560) (1979).
[2] *Miller v. State*, 208 Ga. App. 547 (1) (430 SE2d 873) (1993).

television had been taken; and that Reynolds stated that she strongly suspected Newman, who had been at her house a few days prior to the burglary.

Investigator Garrett Williams was assigned to the case. He testified that he recovered Reynolds' stolen property on October 31, 2002, from the residence of Ruth Lambert. When he arrived at Lambert's residence, Newman was present. Newman had spent the previous night at the residence with Yankton Kit Kramer, Lambert's grandson, who also lived there. Investigator Williams retrieved Reynolds' property from the residence and escorted Newman to the sheriff's office to conduct a videotaped interview.

Investigator Williams testified that after Newman was read her *Miranda* rights and signed the waiver of rights form, he asked her if she knew anything about the burglary. Newman told Investigator Williams that she committed the burglary and explained that she intended to sell the items to cover a bad check that her mother had written. However, she had not sold them because she felt bad about the burglary and planned to return the items to Reynolds. When asked if she committed the burglary alone, and if so, how she carried the large television from the premises, Newman explained that she used to work in the "pulp wood" business and was strong enough to kick in the door and carry the television herself.

Newman's videotaped statement was consistent with the testimony offered by Investigator Williams.[3] Newman explained that even though she and Reynolds were friends, she burglarized her home because Reynolds had previously helped other people take items from Newman's house. Newman stated that she told Kramer that the items belonged to her. At trial, however, Newman denied that she committed the burglary and testified that Kramer did it. She testified that she and Kramer visited Reynolds during the week before the burglary was committed and that they noticed that Reynolds' door was not secure. Newman explained that Kramer committed the burglary to help her cover her mother's bad check and that she confessed to the burglary to protect him because he was on probation, which would be revoked if he were charged with this burglary.

On appeal, Newman argues that her conviction must be reversed because the only evidence connecting her to the burglary is her videotaped confession. In support of her argument, Newman relies on OCGA § 24-3-53, which provides, in relevant part, that "[a] confession alone, uncorroborated by any other evidence, shall not justify a conviction." We reject Newman's argument.

---

[3] During the interview, Newman was also questioned about a stolen boat motor. Kramer eventually pled guilty to theft by receiving stolen property, to wit, the stolen motor.

Newman did not contest the voluntariness of her confession, and "evidence of a confession, freely and voluntarily made by the defendant, is direct evidence of the highest character, and, when corroborated by proof of the corpus delicti, is sufficient to authorize [a] conviction."[4] Proof of the corpus delicti is proof that a crime has been committed.[5] "The corroborating evidence or circumstances need not connect the defendant definitely with the perpetration of the offense. Corroboration in any material particular satisfies the requirements of the law. The finder of fact must determine the amount of evidence necessary to corroborate a confession."[6]

In this case, the corpus delicti of the burglary was proven through the testimony of Reynolds and Corporal Ashley. Furthermore, Newman confessed that she stole the items that were taken in the burglary. The trier of fact obviously did not believe Newman's explanation that she confessed to protect Kramer and was not required to do so.[7] In *Gray v. State*,[8] we held that "[a] confession of burglary [was] sufficiently corroborated where there [was] other testimony that the buildings named in the indictment [had] been burglarized, and the defendant admit[ted that] he stole certain articles shown to have been removed from them."[9] Similarly, here, we find the confession was corroborated by proof of the corpus delicti.[10] Accordingly, the trier of fact was authorized to find Newman guilty beyond a reasonable doubt of burglary.[11]

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED APRIL 14, 2004.

*Billy M. Grantham*, for appellant.
*J. Brown Moseley, District Attorney, Joseph E. Griffin, Ronald R. Parker, Assistant District Attorneys*, for appellee.

---

[4] *Berry v. State*, 48 Ga. App. 303 (1) (172 SE 647) (1934).

[5] Black's Law Dictionary (5th ed. 1979), p. 310.

[6] (Punctuation omitted.) *In the Interest of Q. D.*, 263 Ga. App. 293, 295 (587 SE2d 336) (2003), citing *McCant v. State*, 234 Ga. App. 433, 434 (1) (506 SE2d 917) (1998).

[7] *Harris v. State*, 263 Ga. App. 866, 869 (589 SE2d 631) (2003).

[8] 135 Ga. App. 253 (217 SE2d 482) (1975).

[9] (Citations omitted.) Id. at 254 (3).

[10] See *McCant*, supra at 434-435 (1) (defendant's confession that he stole from fast food restaurant he managed was adequately corroborated by other testimony that restaurant lost over $3,000 in fraudulent refunds, which testimony established the corpus delicti); *Bigham v. State*, 222 Ga. App. 353, 354 (474 SE2d 254) (1996) ("The testimony of the victim, which corresponded to [the defendant's] confession, was sufficient to establish the corpus delicti, i.e., that the crimes actually occurred.").

[11] See *Jackson*, supra.