# 37253. BORDEN v. THE STATE.
# 37254. COLE v. THE STATE.

UNDERCOFLER, Justice.

Marvin Dwayne Borden and Ellis Ray Cole, Jr., were convicted for the robbery and murder of Devero Payne. Sentences of twenty years for the robbery and life imprisonment for the murder were imposed on each. They appeal. We affirm.

1. Borden and Cole, together with Curtis Claxton and Ervin Feredore "Bucky" Morgan, Jr., drove to the B & D Grocery Store, in rural Troup County, for the purpose of robbing the manager, Devero Payne. They waited in Claxton's automobile, drinking beer, until the store closed at about midnight. Borden, Cole and Morgan gained entrance to the store upon the pretext of needing to use the telephone. Morgan went to the telephone while Borden approached the manager, Payne, who had laid his pistol down to light a cigarette. Borden struck Payne with his fist, knocking him to the floor, then kicked him in the face about five times. He held Payne's pistol on Payne while Cole sought, found and took the store's money, a little more than one hundred dollars.

Borden and Cole decided to kill Payne so he could not identify them. Borden stabbed Payne three to six times in the back, and Cole slashed Payne's throat. Borden and Cole took the money and two cases of beer. Morgan took a carton of cigarettes. Borden also took Payne's pistol. Borden and Cole gave Claxton twenty dollars as his share of the loot. Borden kept the pistol, and the beer and the remainder of the money was divided between Borden and Cole.

Medical testimony established that Payne died of extensive bleeding caused by knife wounds to the back and neck. He also suffered from bruises to his face, consistent with his having been kicked in the face by Borden. Either the back or the neck wound was severe enough to have caused death.

Tape-recorded statements by Borden and Cole were admitted following requisite findings after a Jackson-Denno hearing. In his taped statement, Borden admitted he had been drinking, but not heavily, and that he was not drunk or high on dope. In response to the question of whether or not he knew what he was saying, Borden said during his statement, "I know exactly what I'm saying." Cole admitted during his taped statement that he was not drunk or doped up; that he had consumed two or three beers but had not taken any pills before entering the store. Cole also admitted during his statement that he knew what he was saying in making his statement. Both admitted during their statements that they had not been threatened or promised anything in return for their statements.

The foregoing evidence is sufficient to sustain the jury's verdict under the current legal standard. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Denial of his motion to suppress is Cole's first, and Borden's only, enumeration of error. Both were arrested without a warrant. Each contends that his arrest was illegal because it was without probable cause; hence, that his statement and the physical evidence obtained from him at the time of his arrest should have been excluded on motion to suppress. Brown v. Illinois, 442 U. S. 590 (95 SC 2254, 45 LE2d 416) (1975).

Probable cause existed if at the time of the arrest the officers had knowledge and reasonably trustworthy information about facts and circumstances sufficient to warrant a prudent man in believing that Borden and Cole had committed an offense. Beck v. Ohio, 379 U. S. 89 (85 SC 223, 13 LE2d 142) (1964); Vaughn v. State, 247 Ga. 136 (274 SE2d 479) (1981); Morgan v. State, 241 Ga. 485, 486 (1) (246 SE2d 198) (1978); Sanders v. State, 235 Ga. 425, 430 (219 SE2d 768) (1975); State v. Perry, 234 Ga. 842 (218 SE2d 559) (1975). Since hearsay information from an informer was relied on, the reasons to support the conclusion that the informer was reliable must be furnished, and it either must be revealed how the informer obtained the information or the informer must describe the criminal activity in such detail that it may be known that the information is more than a casual rumor circulating in the underworld or an accusation based merely on the individual's general reputation. Spinelli v. United States, 393 U. S. 410 (89 SC 584, 21 LE2d 637) (1969); State v. Perry, supra.

Testimony presented during the hearing on the motion to suppress indicated that during the early morning hours immediately following the robbery-murder, Mr. H. J. Thomas, an attorney, consulted with Curtis Claxton in his law offices in LaGrange. He and Claxton then walked over to the Troup County Sheriff's office so Claxton could turn himself in. The duty officer was Deputy Sheriff Alfred Talley. Mr. Thomas informed Deputy Talley that he might need to go and investigate "an occurrence" at a grocery store out on Roanoke Road. He gave Deputy Talley the names of Cole and Borden. At that time, during the pre-daylight hours of the morning, there was no magistrate on duty. Only Deputy Talley and a jailer were present.

Pursuant to the information received from Mr. Thomas, Deputy Talley dispatched Deputy Jerry Bryan to the grocery store. Upon arrival, Deputy Bryan found Payne lying dead on the floor. Multiple stab or cut wounds were visible on Payne's body. While Deputy Bryan still was at the scene, he received a telephone call from Mr. Thomas at the jail, who advised him, according to Deputy Bryan, to

go to a certain house on New Franklin Road to pick up Borden and Cole "right then" or "that night." Deputy Bryan had known Mr. Thomas for over ten years, and knew him to be a truthful person. He testified that he did not wait to get an arrest warrant because of what Mr. Thomas had said. Bryan found Borden and Cole, fully dressed including their shoes, in a bedroom in an automobile parts shed located behind the house where Mr. Thomas had indicated to Deputy Bryan they would be found. Daylight still had not arrived.

Borden and Cole emphasize in their briefs that Mr. Thomas did not specify during his testimony what the officers would find at the grocery store, and did not expressly state that Borden and Cole were fleeing. However, at the time of the arrests the tip received from Mr. Thomas had materialized through on-site investigation into the fact of a dead, human body lying on the floor of the B & D Grocery Store. The known truthfulness and reliability of Mr. Thomas had been reconfirmed by the fact of the homicide. The officers reasonably could not have expected from Mr. Thomas a full disclosure of his conversations with Curtis Claxton because of the attorney-client privilege. The information Mr. Thomas furnished to the officers together with the fact of the homicide were sufficient to give them probable cause to arrest Borden and Cole without a warrant. *Vaughn v. State,* supra; *Morgan v. State,* supra; *Sanders v. State,* supra; *State v. Perry,* supra.

In *Morgan v. State,* supra, information concerning Morgan's involvement in a murder became known to the arresting officers through the confession of Jose High during the early morning hours when a magistrate was not available. Fearing that Morgan might flee upon learning of High's arrest, the officers arrested Morgan immediately and without a warrant. We held in *Morgan,* supra, as we hold in the circumstances of the present case, that the warrantless arrest was authorized under the provision of Code Ann. § 27-207 (a), which permits arrest without a warrant where "for other cause there is likely to be failure of justice for want of an officer to issue a warrant." Although the arresting officers may not have had at the time of the arrest any knowledge or reasonably trustworthy information that Borden and Cole were "endeavoring to escape,"[1] the trustworthy information they had received from Thomas was adequate to raise reasonable fears that Borden and Cole would flee upon hearing that Claxton had hired an attorney and had turned himself in to the authorities. *Morgan v. State,* supra. Accordingly, the fact that Borden and Cole were in repose rather than in flight at the time of their arrest is not controlling. Borden and Cole were dressed

---

[1] Code Ann. § 27-207 (a).

for flight rather than for sleep, indicating that the reasonable fears of the officers were grounded in fact. Their arrests were legal, and the trial court did not err in so ruling.

3. Cole next contends that his statement should have been excluded because he was drunk on beer and was under the influence of drugs.

During the Jackson-Denno hearing Cole testified that between the hours of 7:00 and midnight on the night of the robbery-murder he drank two cases of beer, took nine valium tablets, and used about half a bag of marijuana. He testified he had no recollection of being given his rights or of making any statement. On cross-examination, he partially recanted that testimony, swearing that he had drunk only half of the two cases of beer. Lieutenant Harold Chipman testified that he smelled alcohol on Cole's breath, and that Cole's eyes were "somewhat dilated," indicating possibly that he was on drugs. He witnessed Cole's signature on the written statement. He was of the opinion that Cole was not in such a condition that he did not know what he was doing. Deputy Bryan testified that Cole read his own statement of rights and said he understood his rights. He witnessed Cole's signature on the written waiver of rights. Cole admitted during his statement that he understood his rights and that he was not drunk or doped up; that he had drunk only two or three beers, and had not taken any pills, before entering the store.

We cannot conclude from the transcript of proceedings either that the "coherency test" has been violated, or that the factual determinations and credibility findings of the trial court during the Jackson-Denno hearing were "clearly erroneous." *Blanchard v. State,* 247 Ga. 415 (— SE2d —) (1981).

4. Cole last contends that his right to trial by an impartial jury was denied as a result of improper remarks by the district attorney during closing arguments.

He objects for the first time in this court to the District Attorney's remarks to the jury that ". . . it 's you that will determine this whole case and the type of county you live in. . . . You speak . . . for the people of this county. . . . [S]how these people . . . you're not going to put up with this kind of stuff in this county." Because of the absence of an objection in the trial court, the third enumeration of error cannot be considered insofar as it relates to the foregoing remarks. *Daniels v. State,* 230 Ga. 126, 127 (2) (195 SE2d 900) (1973).

Cole objected on the ground of relevance to the district attorney's having made reference to other cases in which one person hires another person to kill a third person and is not even present when the killing occurs, a situation the district attorney admitted was not involved in this case. He also objected to the district attorney's

having told the jury that the court would not have let the jury hear Borden's and Cole's statements had they been taken illegally. He contends this statement was a misstatement of the law. His final objection was to the argument that, in effect, feeling sorry for criminals instead of for victims of crime is "one of the reasons that our country is in such a mess insofar as crime goes. We may not have things like this around this county but we do know it's happening all over the country."

The final segment of argument to which objection was made falls into the category of what has been called "appeals to convict for the safety of the community," which have been upheld as not being improper. *Berryhill v. State,* 235 Ga. 549, 552 (221 SE2d 185) (1975).[2] The remark concerning the court's role in excluding illegally obtained statements from consideration by the jury correctly represented the law. *Blanchard v. State,* supra. Overruling the objection to the obviously irrelevant reference to persons who hire killers and are not present at the time of the homicide is, at the utmost, harmless error under the test set forth in *Johnson v. State,* 238 Ga. 59 (230 SE2d 869) (1976).

*Judgment affirmed. All the Justices concur, except that as to Division 3, Hill, P. J., concurs in the judgment only.*

DECIDED APRIL 15, 1981.

*Gordy & Key, R. Michael Key,* for appellant (case no. 37253).
*Allison W. Davidson,* for appellant (case no. 37254).
*Arthur E. Mallory III, District Attorney, Marc E. Acree, Assistant District Attorney, Arthur K. Bolton, Attorney General, William B. Hill, Jr., Assistant Attorney General,* for appellee.

---

[2] The portion of the district attorney's closing argument enumerated as error but not objected to in the trial court also falls into this category.