44183, 44184. THE STATE v. GRANT; and vice versa.
(355 SE2d 646)

CLARKE, Presiding Justice.

This is a murder case in which the state is seeking the death penalty. The trial court granted a pretrial motion to suppress certain evidence; this order was certified for immediate review and we granted the state's application to appeal. The trial court held that the taking of palm prints and a statement were obtained in violation of Grant's Fourth Amendment rights under *Dunaway v. New York,* 442 U. S. 200 (99 SC 2248, 60 LE2d 824) (1979). It is our view that the officer taking Grant to the station for questioning had probable cause for arrest without a warrant pursuant to our holding in *Durden v. State,* 250 Ga. 325 (297 SE2d 237) (1982), and therefore, we reverse the suppression of the evidence. Grant has filed a cross-appeal from an order denying investigative funds; we find no error in the denial of the expenses and affirm.

Grant has been indicted in Bibb County for the offenses of murder, armed robbery, burglary, and arson. On May 2, 1986, at around 11:00 p.m. the fire department arrived at the residence of the victim, Savannah Cook, to respond to a fire in her side of a duplex. The glass in the rear door had been broken, indicating a forced entry. The victim, a 74-year-old woman was found in the bedroom with multiple stab wounds in her body. In the room with the body investigators found a knife with the handle burned off and an afro comb. It appeared that the fire had been started in that room and that a second fire had been set near the rear door.

Detective Robert Hernandez of the Macon police department was the main investigating officer and he arrived on the scene in the early morning hours of May 3. After examining the scene he viewed the body at the funeral home. Other investigating officers were told by neighbors of Mrs. Cook that they had seen George Grant in the area around 8:00 p.m. on May 2 and that he had an afro comb and a knife in his possession at that time. When shown the comb and knife at the scene a neighbor said they were of the type in Grant's possession. A fifteen-year-old gave a statement at around 1:30 a.m. on May 3 to the police that she had seen Grant enter a vacant apartment in the immediate vicinity. She then watched and saw him looking into the occupied residence adjoining Mrs. Cook's; according to her statement Grant then moved to the rear of Mrs. Cook's duplex and she heard the sound of breaking glass. Investigators also were given a piece of paper with the name George Grant and Grant's address. At approximately 2:00 a.m. detective Hernandez ordered surveillance on Grant's house.

Grant arrived at his home around 10:00 a.m. on May 3 and Hernandez was notified and drove to the house. At this time Hernandez knew that a palm print had been obtained from the rear of the victim's home. Grant was outside the house and Hernandez arrived and asked him to come to the city hall for questioning about a break-in, naming the vicinity where the victim lived, but not giving Grant any details. He agreed to accompany the officers and rode in the back of the police car to headquarters. Hernandez began reading *Miranda* rights when they arrived at the office and Grant stopped him saying he was familiar with his rights and was willing to talk. During the interview, in which Grant denied being in the area, Grant was asked to give finger and palm prints. Hernandez stated that Grant agreed saying the police had them anyway; Hernandez believed Grant was referring to his criminal record files. After the prints were taken Grant was driven to his job by officers.

Another officer working on the case had located the woman with whom Grant said he had spent the night; from her the officer recovered a shirt which Grant had left at her home and which appeared to be blood stained. Hernandez learned immediately that the print from the victim's house matched Grant's and a warrant for his arrest was obtained around noon on May 3. Grant was subsequently placed under arrest and gave a confession after signing a waiver of rights form. This confession was taped at around 2:00 p.m.

1. The trial court held that there was no probable cause to arrest Grant when he was first taken in at 10:30 a.m.; he found that although the police did not use force, Grant was in fact seized for Fourth Amendment purposes under *Dunaway*, supra, and evidence obtained during such investigatory detention is subject to the exclu-

sionary rule when probable cause to arrest does not exist. He therefore ordered suppressed the matching palm print, a statement made immediately prior to arrest and the confession, based upon the causal connection between the illegal detention and this evidence. See *Dunaway*, supra. Other rulings on admissibility made by the trial court are not at issue in this appeal.

We agree with the ruling of the trial court that Grant was in fact seized when he first went to the police station and that following *Dunaway* could require suppression of the evidence if there were no probable cause to arrest. As an appellate court we will accept a trial court's rulings on disputed facts and credibility of the witnesses unless the findings are clearly erroneous. *State v. Harris*, 256 Ga. 24 (343 SE2d 483) (1986). However, this is not a case where a factual dispute exists, and we conclude under the facts presented below that the officer seizing Grant had probable cause to do so.

If probable cause to arrest exists at the time of detention and the person detained is outside of his home, the law does not require a warrant. *Durden v. State*, 250 Ga. 325 (297 SE2d 237) (1982). The decision on whether probable cause exists rests upon a test of reasonableness and probabilities. *United States v. Preston*, 608 F2d 626 (5th Cir. 1979). "Probable cause existed if at the time of the arrest the officers had knowledge and reasonably trustworthy information about facts and circumstances sufficient to warrant a prudent man in believing that [defendant] had committed an offense." *Borden v. State*, 247 Ga. 477 (277 SE2d 9) (1981). In this case the officer knew the crime had been committed, and we find that the facts known to Hernandez on the morning of May 2, rose above the level of suspicion and were sufficient to warrant a prudent person in believing that Grant had committed a crime. We reverse the trial court's ruling that the police violated Grant's Fourth Amendment rights; therefore, the evidence taken is not subject to the exclusionary rule.

In the cross-appeal we granted the defendant's application for interlocutory appeal of an order denying a defense request for funds for investigators and experts. The court had previously granted a motion to declare Grant an indigent, and there is no issue as to that finding.

2. The defense specifically requested funds to engage Dr. Michael Prewett, a clinical psychologist, to examine Grant with the possibility of testifying at trial for the guilt-innocence or penalty phases on issues involving voluntariness of Grant's actions and possible evidence of mitigating circumstances. The defense contends that such an evaluation is necessary for a fair trial and that *Ake v. Oklahoma*, 470 U. S. 68 (105 SC 1087, 84 LE2d 53) (1985) requires the state to provide psychiatric evaluations for the defense in cases of indigency. We have also held that the Georgia Constitution may require the state to afford a defendant a psychiatric or psychological evaluation at state ex-

pense. *Williams v. Newsome*, 254 Ga. 714 (334 SE2d 171) (1985).

*Ake* requires that there must first be a preliminary showing that the evaluation is necessary because the sanity of the accused will be a significant factor at trial. See also *Eddy v. State*, 255 Ga. 321 (338 SE2d 262) (1986). Grant argues that the rationale be extended to encompass all issues where the mental state of the defendant could be relevant, e.g., the voluntariness of a confession or the voluntary waiver of Miranda rights. In any case, *Ake* expressly states that its holding does not give the indigent defendant "a constitutional right to choose a psychiatrist of his personal liking or to receive funds to hire his own." *Ake*, supra, 105 SC 1097. In the present case the trial court offered to first have Grant evaluated at Central State Hospital to determine if mental problems exist; the defense refused. Under these circumstances we find no error.

We find no abuse of discretion on the part of the trial court in denying other investigatory funds at this stage of the proceeding. The trial order states that there has been no showing of need and the allowance of funds is within the sound discretion of the court. *Rivers v. State*, 250 Ga. 303 (298 SE2d 1) (1982).

*Judgment reversed in Case No. 44183. Judgment affirmed in Case No. 44184. All the Justices concur.*

DECIDED MAY 19, 1987 —
RECONSIDERATION DENIED JUNE 3, 1987.

*Willis B. Sparks III, District Attorney,* for appellant.
*R. Robider Markwalter, Raymond M. Kelley, Jr.,* for appellee.