## 29278. MOORE v. THE STATE.

PER CURIAM.

Following a plea of guilty, conviction, and sentence of death for murder and armed robbery this case is here by appeal and for mandatory review of the death sentence imposed. The appellant William Neal Moore was charged with committing the offenses of murder and armed robbery on April 2, 1974, was indicted by a grand jury in Jefferson County on May 13, 1974, and entered a plea of guilty to both charges and waived trial by jury on June 4, 1974.

After the appellant's plea of guilty was entered, the prosecution presented the testimony of the doctor who performed the autopsy on the victim's body, two investigative agents and the sheriff who investigated the offenses. The defense presented testimony by the appellant and members of his family. Thereafter, the trial judge found aggravating circumstances and imposed the death sentence.

The testimony and other evidence revealed that the appellant had been a member of the U. S. Army, and former military policeman, where he met George Curtis, a nephew of the victim Fredger Stapleton. Curtis told him about his uncle Fredger Stapleton having money and showed him where he lived. In the words of the defendant, "We planned this, he wanted to burn his uncle up, he would get the money and burn him up in the house, and we went over there and Curtis got scared after he went into the house, that was the first time, we was drinking, we had been drunk . . . we went over to the house, we went to the back door, and we got in between one of the bedrooms and the front room, there was a locked door, we left and went back over to Curtis' house. Curtis, he left and I went back over there . . ."

In the late evening of April 2, 1974, appellant apparently re-entered the Stapleton home through a

bedroom window. After gaining entrance he was surprised by Stapleton who proceeded to fire a shotgun at him. Appellant fired all five shots in his .38 caliber pistol at Stapleton. Stapleton subsequently died from two bullet wounds in the chest. After shooting Stapleton, appellant proceeded to remove two billfolds from the victim's pockets and took the victim's shotgun. Appellant then left through the front door of the Stapleton home and walked to his automobile which was parked by a laundromat nearby. He proceeded to his residence, burned the victim's wallets and disposed of the shotgun. The money taken from Stapleton amounted to $5,700, which appellant subsequently surrendered to officers. Evidence at the scene implicated the appellant and corroborated his statement.

Appellant denied any intention of killing Stapleton: "I didn't have no intention of killing him. When I went in there, he come out there with a shotgun and hit me in the leg, it scared me, made me shoot him, and I'm sorry for what I did, and ask for mercy of the court." *Held:*

1. Appellant's first enumeration of error is that "The imposition and carrying out of the death penalty in accordance with the present Georgia death penalty statute is unconstitutional and in violation of the Eighth and Fourteenth Amendments of the United States Constitution."

(a) In support of this contention, appellant argues that the discretion permitted by the death penalty statute leaves room for arbitrariness, thus rendering the statute unconstitutional as a violation of equal protection.

Although the appellant plead guilty, the record is clear that he reserved his constitutional objections at the trial level. In *Coley v. State,* 231 Ga. 829 (204 SE2d 612), this court addressed the issue of discretion in the Georgia death penalty statute (Code Ann. §§ 26-2001 and 27-2534.1 et seq.) in the face of the Eighth and Fourteenth Amendments to the Constitution of the United States as those amendments were construed and applied by the Supreme Court of the United States in Furman v. Georgia and Jackson v. Georgia, 408 U. S. 238 (92 SC 2726, 33 LE2d 346). We there noted that "it is not discretion per se which must be condemned, but it is unguided discretion

that does not 'produce evenhanded justice.'" P. 834. We found there that "the system of dispensation of the death penalty provided by the statute does not offend the principles of decision of the U. S. Supreme Court in Furman and Jackson." P. 835. Although we now find appellant's contention to be without merit, the constitutionality of the application of the death penalty to him in the instant case must be determined upon review of the sentence by this court pursuant to the current Georgia statute. Code Ann. § 27-2503 (b), as amended by Ga. L. 1974, pp. 352, 357, was not in effect and thus is inapplicable to this case.

(b) The appellant further argues that the death penalty constitutes cruel and inhuman punishment in violation of the prohibition of the Eighth Amendment to the U. S. Constitution.

We have found no case where a majority of the Supreme Court of the United States or of this court has held that the death penalty constitutes cruel and unusual punishment.

In the Furman and Jackson cases, Chief Justice Burger, dissenting, noted "that only two members of the court, Justice Brennan and Justice Marshall, have concluded that the Eighth Amendment prohibits capital punishment for all crimes and under all circumstances." See also *Coley v. State,* 231 Ga. 829, supra; *House v. State,* 232 Ga. 140 (205 SE2d 217); and *Eberheart v. State,* 232 Ga. 247 (206 SE2d 12).

2. (a) The appellant contends as to the sentence that the imposition of the death penalty in this case is disproportionate to the sentence imposed in other similar cases.

Appellant cites two trials, not a part of the record of this trial, which he alleges are similar to the facts in the instant case wherein the death sentence was not imposed. Although they were not considered by the trial judge and cannot be considered by this court, some comment is appropriate concerning this court's duty to compare the sentence in this case with that imposed in similar cases. As we view the court's duty in light of the Furman and Jackson cases and the statutory provisions designed by the Georgia legislature to meet the objections of those

cases, this court is not required to determine that less than a death sentence was never imposed in a case with some similar characteristics. On the contrary, we view it to be our duty under the similarity standard to assure that no death sentence is affirmed unless in similar cases throughout the state the death penalty has been imposed generally and not "wantonly and freakishly imposed," as stated by Justice Stewart in his concurring opinion in the Furman and Jackson cases (408 U. S. 238, 310), supra. We are endeavoring to do our duty under the standards provided.

(b) It is next asserted that there was no aggravating circumstance in this case because a person cannot be guilty of armed robbery if the victim is not conscious or alive at the time of the robbery.

Code Ann. § 26-1902 provided: "A person commits armed robbery when, with intent to commit theft, he takes property of another from the person or the immediate presence of another by use of an offensive weapon." Ga. L. 1968, pp. 1249, 1298; 1969, p. 810. In *Hicks v. State,* 232 Ga. 393 (207 SE2d 30), we concluded that this section "clearly contemplates that the offensive weapon be used as a concomitant to a taking which involves the use of actual force or intimidation (constructive force) against another person." P. 403.

This accords with the general rule in the United States that the force or intimidation essential to robbery must either precede or be contemporaneous with, and not subsequent to, the taking. 77 CJS 457, Robbery, § 11 (1952). In *Hicks* the taking occurred before the victim woke up.

Without the force used by appellant here, the taking from Stapleton could not have been accomplished. That Stapleton died from the force used either immediately, or subsequently to the taking, does not make the offense any less a robbery.

Appellant's admitted purpose in going to Stapleton's home was to rob him. He then shot Stapleton to overcome his resistance before taking Stapleton's money. We conclude that the evidence established that the offense of murder was committed while the appellant was engaged in another capital felony, to wit: armed robbery.

The trial judge found as mitigating circumstances that the appellant did everything that a man could do after he was caught, and did an honorable thing in making true statements, cooperating with the officials and pleading guilty. In addition to these circumstances appellant urges consideration of the following: that he fully cooperated with the police; that he is 23 years old; that he is not an experienced criminal; and that he started shooting from a combination of fright and intoxication.

In our sentence review we have considered each of the above circumstances, along with the aggravating circumstance found by the trial court and the evidence concerning the crime introduced in court.

The death sentence was imposed in this case by the trial judge without the intervention of a jury. We have reviewed the sentence as required by Ga. L. 1973, p. 159, et seq. (Code Ann. § 27-2537 (c)), as we did in *Coley v. State,* 231 Ga. 829 supra, and each subsequent case involving a death penalty under the new statute. We conclude that the sentence of death imposed here was not imposed under the influence of passion, prejudice, or any other arbitrary factor. The evidence supports the trial judge's finding of a statutory aggravating circumstance, i.e., that the offense of murder was committed while the appellant was engaged in another capital felony, to wit: armed robbery.

We have compared the evidence and sentence in this case with other similar cases and conclude the sentence of death is not excessive or disproportionate to the penalty imposed in those cases. Those similar cases we considered in reviewing the case are: *Lingo v. State,* 226 Ga. 496 (175 SE2d 657), *Johnson v. State,* 226 Ga. 511 (175 SE2d 840), *Pass v. State,* 227 Ga. 730 (182 SE2d 779), *Watson v. State,* 229 Ga. 787 (194 SE2d 407), *Scott v. State,* 230 Ga. 413 (197 SE2d 338), *Kramer v. State,* 230 Ga. 855 (199 SE2d 805), and *Gregg v. State,* 233 Ga. 117 (210 SE2d 659).

In each of the comparison cases cited, the records show that the accused was found guilty of murder of the victim of a robbery or burglary committed in the course of such robbery or burglary. In each of those cases, the jury imposed the sentence of death. In *Pass v. State,* supra, the murder took place in the victim's home, as occurred in the

case under consideration.

We find that the sentence of death in this case is not excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. Code Ann. § 27-2537 (c) (3). Notwithstanding the fact that there have been cases in which robbery victims were murdered and the juries imposed life sentences (see Appendix), the cited cases show that juries faced with similar factual situations have imposed death sentences. Compare *Coley v. State,* 231 Ga. 829, 835, supra. Thus, the sentence here was not "wantonly and freakishly imposed" (see above.)

We have also reviewed the transcript and record in this case and have determined that the conviction and sentence are not contrary to law, and that there is ample evidence, in addition to the plea of guilty, to support the trial court's judgment. The judgment of the trial court will, therefore, be affirmed.

*Judgment affirmed. All the Justices concur, except Hill, J., who concurs specially, and Gunter, J., who dissents.*

ARGUED OCTOBER 16, 1974 — DECIDED FEBRUARY 12, 1975 — REHEARING DENIED March 4, 1975.

*Hinton R. Pierce,* for appellant.
*H. Reginald Thompson, District Attorney, Arthur K. Bolton, Attorney General, John W. Dunsmore, Jr., Deputy Assistant Attorney General,* for appellee.

HILL, Justice, concurring specially.

In Furman v. Georgia, 408 U. S. 238, supra, there were 10 opinions, one per curiam (representing the composite view of a majority of the court as to the proper result), and one by each of the Justices. Justices Douglas, Brennan, Stewart, White and Marshall found against the imposition of the death penalty in Furman. The Chief Justice and Justices Blackmun, Powell and Rehnquist dissented.

The Chief Justice noted that Justice Brennan and Justice Marshall had concluded that the Eighth

Amendment prohibits capital punishment under all circumstances as being cruel and unusual punishment, that Justice Douglas had determined that the death penalty can traverse the Eighth Amendment but did not necessarily require its final abolition, and Justice Stewart and Justice White had concluded that the death sentences before the court must be set aside because prevailing sentencing practices did not comply with the Eighth Amendment. 408 U. S. 375.

Presumably the validity of Georgia's revived death penalty statute, Ga. L. 1973, p. 159 (Code Ann. § 27-2534.1), would be found valid by the Chief Justice and the other three dissenting Justices. Presumably Justices Brennan and Marshall would find it invalid. Therefore, in order to judge the validity of the death sentence in this case it becomes necessary in my view to undertake to ascertain the positions of Justice Douglas, Justice Stewart and Justice White upon this issue.

This court found the 1973 Act to be valid in *Coley v. State,* 231 Ga. 829, supra, holding, as I read that opinion, that the Act permits the imposition of the death penalty controlled by clear and objective standards so as to produce non-discriminatory application. 231 Ga. 834. Justice Gunter, in his concurring and dissenting opinion, pointed out that the Act authorized the judge or jury to decline to impose the death penalty notwithstanding the presence of statutory aggravating circumstances. 231 Ga. 840-841.

It therefore has become necessary to undertake to ascertain how the three specified Justices, and the writer, see this issue: Where a death sentence may be withheld by uncontrolled discretion, is the imposition of the death sentence controlled by clear and objective standards nevertheless invalid?

It is difficult to divine how the three would answer, but as Justice White wrote, even though my conclusions cannot be proved, I must arrive at judgment. 408 U. S. 313. As I read Justice Douglas' concurring opinion, he would hold invalid the sentence of death where the alternative of imprisonment was left to the uncontrolled discretion of judges or juries. Justice Stewart would, I believe, hold the death sentence invalid under a statute

where the legislature has not found the penalty to be invariably necessary and where others convicted of murders and rapes just as reprehensible do not receive the unique penalty. Finally, Justice White would, I believe, hold invalid the sentence of death where juries, in their discretion, may and frequently do refuse to impose it no matter what the circumstances of the crime.

Not one of the three Justices can I feel with certainty would approve a death statute which prevents uncontrolled imposition of the penalty but which permits discretionary non-imposition.

Moreover, the defect, as they might see it, of discretionary non-imposition, may be compounded by the following:

The prosecutor has discretion in bargaining for a plea of guilty in exchange for a non-death sentence. Once on trial he exercises discretion in deciding whether to ask the jury to impose the death penalty. The trial judge has discretion to grant a new trial, accept a guilty plea, and impose a non-death sentence upon that plea. Presumably these events would occur when the evidence showing aggravation is slight.

The new sentencing procedures law, Ga. L. 1974, pp. 352, 357, will permit juries to determine whether any mitigating or statutory aggravating circumstances exist "and whether to recommend mercy for the defendant."

Although a majority of the United States Supreme Court might find the discretionary non-imposition of the death penalty to invalidate the controlled imposition thereof, I do not. In these murky waters, I do not feel that this conclusion constitutes wilful disobedience to the Constitution.

The discretionary non-imposition of a sentence of death is an act of mercy. I cannot find that discretionary mercy is unconstitutional or that it renders invalid the controlled nongranting of it. If the Constitution says otherwise, then the executives' powers of commutation provided by civilized governments would render any sentence of death invalid. Moreover, if discretionary non-imposition of the death penalty were abolished, then the inability to be merciful in an appropriate case would, in my view, constitute cruel and unusual punishment in

that case.

I concur in upholding the validity of Ga. L. 1973, p. 159 et seq. (Code Ann. § 27-2534.1 et seq).

APPENDIX.

Similar Cases Considered by the Court: *Lingo v. State,* 226 Ga. 496 (175 SE2d 657); *Johnson v. State,* 226 Ga. 511 (175 SE2d 840); *Pass v. State,* 227 Ga. 730 (182 SE2d 779); *Watson v. State,* 229 Ga. 787 (194 SE2d 407); *Callahan v. State,* 229 Ga. 737 (194 SE2d 431); *Scott v. State,* 230 Ga. 413 (197 SE2d 338); *Kramer v. State,* 230 Ga. 855 (199 SE2d 805); *Creamer v. State,* 232 Ga. 137 (205 SE2d 240); *Gregg v. State,* 233 Ga. 117 (210 SE2d 659); *Morris v. State,* 228 Ga. 39 (184 SE2d 82); *Stevens v. State,* 228 Ga. 621 (187 SE2d 281); *Kitchens v. State,* 228 Ga. 624 (187 SE2d 268); *Atkins v. State,* 288 Ga. 578 (187 SE2d 132) *Dutton v. State,* 228 Ga. 850 (188 SE2d 794); *Sims v. State,* 229 Ga. 33 (189 SE2d 68); *Scott v. State,* 230 Ga. 47 (195 SE2d 414); *Harwell v. State,* 230 Ga. 480 (197 SE2d 708); *Allen v. State,* 231 Ga. 17 (200 SE2d 106); *Conroy v. State,* 231 Ga. 472 (202 SE2d 398); *Johnson v. State,* 231 Ga. 138 (200 SE2d 734); *Pierce v. State,* 231 Ga. 731 (204 SE2d 159); *Sheats v. State,* 231 Ga. 362 (201 SE2d 420); *Emmett v. State,* 232 Ga. 110 (205 SE2d 231).