## 38570. HORTON v. THE STATE.

JORDAN, Chief Justice.

Appellant, Jimmy Lee Horton, was convicted of murder and two counts of burglary. He was sentenced to death for the murder and to twenty years for each of the burglaries. He now appeals, raising 16 enumerations of error. We affirm.

The facts can be summarized as follows: Around 6:00 p.m. of the evening of November 28, 1980, appellant borrowed a pickup truck from a friend on the pretext of needing to move furniture. Later that evening, appellant and Pless "Chug" Brown burglarized the home of Willie James Griffin. The two took a dark-colored H & R .22 caliber pistol, some bullets, a television and a wedding band. Next, appellant and Brown forced their way into the apartment of Sherrell Grant.

Shortly after 11:00 p.m., Sherrell Grant and Don Thompson returned to her apartment. The front door was not fully closed. Ms. Grant pushed the door open and saw that several items of her furniture were missing. They listened and, hearing no noise, decided the burglars had left. As a precaution, however, they went to the apartment next door to borrow a gun, and then, while Ms. Grant waited outside, Thompson entered her apartment.

Ms. Grant noticed that a pickup was backed into a parking place at the end of the parking lot. A black male came around the corner of the apartments and went to the pickup. He was soon followed by a taller black male who, in Ms. Grant's words, ". . . hesitated, like he might have — was going to go back around, but he went on like he was going to walk to the truck. I told him to stop and not go anywhere. And when I did that, he started shooting at me." Her neighbor pulled Ms. Grant into his apartment and locked the door. They heard a second

volley of shots. The neighbor called the police and Ms. Grant exited the apartment to look for Thompson. The pickup was gone. Thompson was found slumped over behind the apartment building. The gun he had borrowed had not been fired; the safety was on.

Appellant, who was taller than Brown, returned the pickup to its owner to whom he admitted that he had shot a man. The pistol stolen in the first burglary was recovered from appellant's residence. This was later identified as the murder weapon. The screwdriver used to force open the door to Ms. Grant's apartment was found in appellant's car.

The evidence, viewed in a light most favorable to the prosecution, was clearly sufficient to support the jury's finding of guilt as to the murder and the two burglaries. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

### Guilt-Innocence Phase

1. In his eighth enumeration of error, appellant contends the court erred in failing to charge voluntary manslaughter upon timely request.

A written request to charge voluntary manslaughter must be given if there is slight evidence to support it. *State v. Clay,* 249 Ga. 250 (1) (290 SE2d 84) (1982). See also, *Washington v. State,* 249 Ga. 728 (292 SE2d 836) (1982), and *Johnson v. State,* 249 Ga. 621 (292 SE2d 696) (1982).

In this case, we are unable to find even slight evidence that appellant acted "as the result of a sudden, violent and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person . . ." Code Ann. § 26-1102. Compare, *Krier v. State,* 249 Ga. 80, 94 (287 SE2d 531) (1982). Being discovered during the commission of a burglary is not as a matter of law such provocation as would require a charge on voluntary manslaughter.

2. In his ninth enumeration of error, appellant complains of the following charge: ". . . [I]f a person of sound mind and discretion intentionally and without justification uses a deadly weapon or instrumentality in the manner in which such weapon or instrumentality is ordinarily used and thereby causes the death of a human being, you may infer the intent to kill."

Appellant contends this charge violates the rule that if the state's evidence shows mitigating circumstances, it is error to charge that malice is presumed from the use of a deadly weapon. See, e.g., *Jordan v. State,* 232 Ga. 749 (5) (208 SE2d 840) (1974). We find no circumstances of alleviation or mitigation in the evidence presented by the state; moreover, it is clear that the trial court did not charge that malice may be presumed from the use of a deadly weapon. This

enumeration of error is meritless.

3. The trial court did not err in overruling appellant's motion for change of venue. Only two jurors were excused because they had formed fixed opinions as to guilt or innocence from pre-trial publicity. Compare, *Waters v. State,* 248 Ga. 355 (1) (283 SE2d 238) (1981).

### Sentencing Phase

4. In his fourth enumeration of error, appellant contends the trial court erred in refusing to permit him to argue to the jury during the sentencing phase of his trial that since he was a habitual violator, he would have to serve 20 years without parole. See Code Ann. § 27-2511. Appellant argues that he was deprived of his right to present this mitigating circumstance to the jury.

The "Eighth and Fourteenth Amendments require that the sentencer . . . not be precluded from considering, *as a mitigating factor,* any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." Lockett v. Ohio, 438 U. S. 586, 604 (98 SC 2954, 57 LE2d 973) (1978) (footnotes omitted). However, nothing in Lockett v. Ohio "limits the traditional authority of a court to exclude, as irrelevant, evidence not bearing on the defendant's character, prior record, or the circumstances of his offense." Ibid., fn. 12.

The policy of this state is not to allow argument or charge on matters concerning parole. *McKuhen v. State,* 216 Ga. 172 (5) (115 SE2d 330) (1960); Code Ann. § 27-2206. This policy forbids comment with regard to a defendant's *inability* to make parole, as well as his *ability* to do so. *Golden v. State,* 213 Ga. 481 (3) (99 SE2d 882) (1957).

The ability or inability to obtain early release does not relate to a defendant's character, his prior record, or the circumstances of his offense. Thus our state policy forbidding argument about such matters does not run afoul of either the Eighth or Fourteenth Amendments to the U. S. Constitution and the trial court did not err in refusing to allow the argument.

5. In his fifth enumeration of error, appellant contends the trial court erred in refusing to allow him to describe to the jury during his closing argument the mechanics of an electrocution.

In *Franklin v. State,* 245 Ga. 141 (7) (263 SE2d 666) (1980) we held that testimony regarding descriptions of executions, offered during the sentencing phase of a trial, may be excluded as irrelevant upon objection by the state. No such evidence was offered in this case and the trial court did not err in refusing to allow appellant to argue facts not in evidence. Code Ann. § 81-1009.

6. In his sixth enumeration of error, appellant contends the trial

court erred in denying his written request to charge: "The fact that the victim was the District Attorney of this circuit is not to be considered by you as being in aggravation of punishment. This should play no part in your thought processes in determining the question of punishment." Appellant contends the charge was a correct statement of the law, was pertinent and material to the issues, and was not substantially covered in the charge given; therefore the failure to charge his written request was reversible error. See *Ray v. Gallant-Belk Co.,* 147 Ga. App. 580 (4) (249 SE2d 635) (1978). We disagree.

Under our capital punishment law, juries may not recommend the death sentence unless they find the presence of at least one of the aggravating circumstances specifically enumerated in Code Ann. § 27-2534.1 (b) (1-10).[1] Code Ann. § 27-2534.1 (c). In deciding whether or not to recommend the death penalty, however, the jury may consider not only the "statutory aggravating circumstances" set forth in Code Ann. § 2534.1 (b) (1-10) but also any "mitigating circumstances or aggravating circumstances authorized by law." Code Ann. § 27-2534.1 (b). See also Lockett v. Ohio, supra.

Thus, capital punishment is possible only in a small number of explicitly defined subclasses of homicide cases; but as to such cases, the jury is allowed to give the case before it individualized consideration of the circumstances of the crime and of the defendant.[2] Compare Roberts v. Louisiana, 428 U. S. 325 (96 SC 3001, 49 LE2d 974) (1976), and Woodson v. North Carolina, 428 U. S. 280 (96 SC 2978, 49 LE2d 944) (1976).

There is no doubt that a jury's recommendation of the death penalty could not properly be based on constitutionally impermissible reasons, such as race or religious preference. However, whether or not the victim's status as the District Attorney properly could have been considered in aggravation,[3] it is clear that it was not.

The victim's occupation was made the subject of extensive voir dire by appellant who asked for and received assurances that the victim's job would not be considered as an aggravating circumstance. In his closing argument, appellant argued, "I go back to the fact that

---

[1] Except for the offenses of aircraft hijacking or treason, which do not require a finding of statutory aggravating circumstances. Code Ann. § 27-2534.1 (a).

[2] The jury's discretion to impose capital punishment is further limited by our review of the death penalty wherein we determine, among other things, whether the death penalty is excessive or disproportionate to the penalty imposed in similar cases. Code Ann. § 27-2537 (c) (3).

[3] Code Ann. § 27-2534.1 (b) (5) (The murder of a . . . district attorney . . . during or because of the exercise of his official duty) was not charged to the jury.

Don Thompson was the District Attorney. On my own, I asked everybody would that influence his verdict, and you told me no . . . I know that's not going to enter into your verdict . . ." The prosecutor also argued that the death penalty wasn't being sought because the victim was a District Attorney. Moreover, there is no indication from the evidence presented that appellant knew at the time of the murder that his victim was the District Attorney.

7. Appellant's seventh, twelfth, and thirteenth enumerations of error relate to allegedly improper argument by the prosecutor.

During the sentencing phase, evidence was offered of appellant's prior record. In December of 1970 appellant committed two burglaries. In early 1971, he stole one motor vehicle and attempted to steal another. In May 1971, appellant pled guilty to the burglaries and received six years for each, to run concurrently. In October 1971, he pled guilty to the motor vehicle thefts and received a sentence of three years,[4] to run concurrently with the burglary sentences.

In December 1975 and again in February 1976, appellant committed two more burglaries. He pled guilty to these in April 1976. He escaped from the penitentiary in August of 1976 and before his recapture, committed the offenses of theft by receiving and armed robbery. In June 1977, he pled guilty to the theft and armed robbery charges.[5] In August 1977, he pled guilty to the escape. All the sentences, except for the escape, ran concurrently with each other.[6] No sentence required appellant to serve more than six years (he was given a one year sentence for the escape).

During his argument, the prosecutor pointed out that, because of the concurrent sentencing, appellant had actually been sentenced to serve only six years for his first four offenses. He noted the comparatively light sentences received for the other crimes and argued that the "system" had been good to appellant and had given him every chance to straighten out his life. He argued that the penitentiary was not punishment for appellant; that appellant was "willing to plead guilty to anything that doesn't do anymore than send him back to the penitentiary." He argued that the death penalty was obviously a deterrent; that "[t]hose who would say the death penalty is no deterrent rely on negative statistics. They will tell you that statistics [do] not prove that the death penalty is a deterrent.

---

[4] Apparently only one three year sentence was imposed even though two charges were listed on the sentence form.

[5] Additional charges of burglary and motor vehicle theft were nolle prossed, possibly in exchange for a guilty plea to the armed robbery count.

[6] Either by express direction, or by operation of law. See Code Ann. § 27-2510.

Well, of course, statistics can't prove that . . . The reason our death penalty now hasn't reduced killings any is because we are not using it, not carrying out sentences. That's the reason it's not deterring it now."

Appellant contends that the prosecutor made an argument concerning parole, in violation of Code Ann. § 27-2206. We find no such violation. The prosecutor's remarks made no reference to parole. The thrust of his argument was that since the sentences imposed were run concurrently, appellant had got a break he didn't deserve and that he had had his chance to be rehabilitated, but had failed to respond because he was beyond rehabilitation and did not deserve another chance. See, *Redd v. State,* 242 Ga. 876 (4) (252 SE2d 383) (1979).

Appellant also contends that the prosecutor's argument concerning deterrence injected facts into the case not in evidence and contaminated the jury with the "Private Slovik Syndrome" by leading the jury to believe a sentence of death would not be carried out.

"Were this not a death penalty case, these [latter two] enumerations of error would present nothing for review since no objection to these remarks was made. [Cits.] Because this is a death penalty case, and the allegedly improper argument occurred in the sentencing phase of the trial, we have reviewed these remarks and determined that they were not so inflammatory and prejudicial as to mandate setting aside the death penalty on the basis that it was imposed under the influence of passion, prejudice, or any other arbitrary factor. [Cits.]" *Gilreath v. State,* 247 Ga. 814 (15) (279 SE2d 650) (1981).

While the prosecutor should not have referred to facts not in evidence, the fact that the death penalty has seldom actually been carried out in recent years is surely a matter of common knowledge. We do not believe that the jury was led to believe that if they recommended the death penalty, it would never be carried out. In fact, the clear implication of the argument was that it eventually would be. See also *Borden v. State,* 247 Ga. 477 (4) (277 SE2d 9) (1981).

8. In his eleventh enumeration of error, appellant contends the court's charge on mitigating circumstances was error, citing Spivey v. Zant, 661 F2d 464 (5th Cir. 1981). We find no error.

The trial court defined mitigating circumstances for the jury as follows: "Mitigating circumstances are those which do not constitute a justification or excuse for the offense in question but which in fairness and mercy may be considered as extenuating or reducing the degree of moral culpability or blame."

The trial court instructed the jury to consider evidence as to mitigating circumstances, and made it clear to the jury that it could recommend a life sentence even if it found that the state had proven the existence of one or more aggravating circumstances beyond a reasonable doubt.

The Georgia death penalty statute does not require that specific mitigating circumstances be singled out by the court in its charge to the jury. *Gates v. State,* 244 Ga. 587 (6) (261 SE2d 349) (1979). See also, Lockett v. Ohio, supra. The instructions given sufficiently defined mitigating circumstances and informed the jury as to the function of mitigating circumstances in the sentencing deliberations.

## *Extraordinary Motion for New Trial*

9. Appellant was sentenced to death February 27, 1981. He filed a motion for new trial, which was denied August 17, 1981. He then appealed to this court. However, on October 2, 1981, appellant filed in the trial court an "Unusual and Extraordinary Motion for New Trial as to Sentencing on the Basis of Newly Discovered Evidence." This court ordered that the appeal be held in abeyance pending a hearing and determination by the trial court on the extraordinary motion. On March 8, 1982, the trial court, after hearing, denied the motion. In his fifteenth enumeration of error, appellant contends the denial of his extraordinary motion for new trial as to sentencing was error.

Appellant testified at the hearing on the motion that in the latter part of July, 1981, he heard for the first time that Pless Brown might have admitted to Arthur Fryer that he, Brown, had killed Don Thompson. It is not disputed, and the trial court found as a matter of fact, that appellant's attorneys had no knowledge of Brown's alleged confession until contacted by appellant in late September, 1981.

Fryer was called and testified that Brown had admitted being the triggerman. However, Fryer also testified that he had met appellant in a cemetery three to four days after Thompson's death and had informed appellant of Brown's admission. Moreover, Fryer admitted that he had been a fugitive from justice from the time of the shooting until September, 1981, when he was caught and placed in the Bibb County jail where appellant was being held pending his appeal. He further admitted that he had known appellant for some 12 to 15 years and that he and appellant had committed a burglary together in 1976, for which they both served time. Finally, he admitted that he had refused to sign his affidavit, which was attached to appellant's extraordinary motion for new trial, until he was told by appellant's attorneys that Brown, whom Fryer also knew well, had already been sentenced to life imprisonment and was "home free."

Fryer's testimony was contradicted by Hamp Davis, who testified that Fryer had told him that the day after Thompson was killed, appellant had admitted shooting a man but didn't know who he was.

The six requirements for granting a new trial on the basis of newly discovered evidence are well established and need not be repeated in full here. See *Drake v. State,* 248 Ga. 891, 894 (287 SE2d 180) (1982); and *Dick v. State,* 248 Ga. 898, 900 (287 SE2d 11) (1982). The trial court found that appellant failed to establish that the evidence had come to his knowledge since the trial, and found that it was owing to the appellant's want of due diligence that his attorneys did not acquire the evidence sooner.

The evidence supports the court's finding that appellant, but not his attorneys, knew of the "confession," if there was one, and failed to notify his attorneys even though he had ample opportunity to do so. Appellant's testimony that he only learned of Brown's confession long after the trial was over was contradicted by the very witness by whom he sought to establish that such a confession was made.

Moreover, the circumstances surrounding the alleged newly discovered evidence, as well as the testimony of Hamp Davis, "cast serious doubt on the credibility" of Fryer. *Drake v. State,* supra. We conclude that the trial court did not abuse its discretion in denying appellant's extraordinary motion for new trial as to sentencing.

### Sentence Review

10. We conclude from our review of the record in this case that the sentence of death was not imposed under the influence of passion, prejudice, or other arbitrary factor. Appellant's fourteenth enumeration of error is without merit.

11. The jury found as a statutory aggravating circumstance that "the offense of murder was committed while the offender was engaged in the commission of burglary ..." See Code Ann. § 27-2534.1 (b) (2). Appellant contends in his third enumeration of error that this finding was not supported by the evidence, because appellant had withdrawn from the burglary and was attempting to flee when the murder took place.

There is no merit to this contention. In a case involving a felony murder, we held: "A homicide is within the res gestae of the underlying felony for the purpose of the felony-murder rule if it is committed while fleeing the scene of the crime. [Cit.] The weight of authority holds that the underlying felony continues during the escape phase of the felony if there is continuous pursuit immediately organized, and the felony terminates at the point the perpetrator has

arrived at a place of seeming security or when the perpetrator is no longer pursued by the authorities. [Cits.]" *Collier v. State,* 244 Ga. 553, 560 (3) (261 SE2d 364) (1979).

Appellant was discovered while still at the scene of the burglary. He fired at two people in his attempt to get away, killing one. We readily conclude that the murder occurred during the commission of the burglary and that the evidence supports the jury's finding of statutory aggravating circumstance (b) (2) beyond a reasonable doubt. Code Ann. § 27-2534.1 (c).

12. In his sixteenth enumeration of error, appellant contends that the imposition of the death penalty for a murder occurring during the commission of a burglary is per se excessive because such a murder does not reflect a consciousness materially more depraved than that of any person guilty of murder.

In Godfrey v. Georgia, 446 U. S. 420 (100 SC 1759, 64 LE2d 398) (1980), the United States Supreme Court set aside Godfrey's death sentences, which had been imposed on the basis that the murders were outrageously or wantonly vile, horrible or inhuman in that they involved torture, depravity of mind, or aggravated batteries to his victims. Code Ann. § 27-2534.1 (b) (7). The jury's verdict failed to note that torture, depravity of mind or aggravated battery had been found. The Court concluded that none could have been found because it had been conceded by the prosecutor that neither torture nor aggravated battery had been involved and Godfrey's "crimes cannot be said to have reflected a consciousness materially more 'depraved' than that of any person guilty of murder." Id. at 433. Thus, the evidence failed to support a finding of the (b) (7) aggravating circumstance.

Nothing in Godfrey or in our death penalty statute requires that a death penalty be set aside in every case unless the defendant can be characterized as "depraved." The aggravating circumstance (b) (2) found in appellant's case does not require a finding of depravity of mind.

Appellant has given us no reason to hold that the death penalty is excessive per se for a murder committed during a burglary. Compare, Coker v. Georgia, 433 U. S. 584 (97 SC 2861, 53 LE2d 982) (1977). This enumeration of error is meritless.

13. In his second enumeration of error, appellant contends his death sentence is disproportionate to the sentence imposed in a similar case, that of his co-defendant, who was sentenced to life imprisonment. Appellant argues that no distinction exists which would justify different sentences in the two cases.

We note that appellant, not Brown, fired at Sherrell Grant with a dark-colored pistol similar to the one later found in appellant's

apartment which was shown to be the murder weapon.[7] Appellant borrowed the truck used in the two burglaries, owned the screwdriver which was used to pry open the door in the second burglary and sold the television taken in the first burglary. Appellant admitted to Hamp Davis (and possibly to Arthur Fryer) that he was the triggerman.

The evidence shows that appellant, and not Brown, was the one who planned the burglaries and who actually killed Don Thompson. It is not insignificant that appellant was convicted of *malice* murder whereas Brown's conviction was for *felony* murder (which does not require a finding of a specific intent to kill — Code Ann. § 26-1101(b)).

Moreover, appellant's prior record, see Division 7 of this opinion, is much worse than Brown's. Thus, considering both the crime and the defendant, it is obvious that there are significant differences between Brown and his crime and appellant and his crime.[8]

14. In his first enumeration of error, appellant contends his death sentence is excessive and disproportionate to the sentences generally imposed in cases similar to his. Appellant refers us to a number of cases in which a murder occurred during the commission of a burglary but the defendant was sentenced to life.

We will not affirm a sentence of death unless in similar cases throughout the state the death penalty has been imposed generally and not "wantonly and freakishly." *Moore v. State,* 233 Ga. 861, 864 (213 SE2d 829) (1975). However, since the emphasis is on what sentence triers of fact are willing to impose, we do not include for comparison purposes any case as to which the death penalty was not an available option because the case post-dated Furman v. Georgia, 408 U. S. 238 (92 SC 2726, 33 LE2d 346) (1972), and pre-dated the enactment of our 1973 death penalty law.[9] Thus, we do not consider *Allen v. State,* 231 Ga. 17 (200 SE2d 106) (1973), one of the allegedly similar cases cited by appellant.

We have reviewed all the other cases cited by appellant and all

---

[7] The only other pistol involved was a silver-colored one taken from Ms. Grant's apartment. She was positive that the gun appellant fired at her was not hers.

[8] Even if there were none, an isolated decision of a jury to recommend mercy in a similar case would not necessarily require this court to find a sentence of death excessive or disproportionate. *Moore v. State,* 233 Ga. 861 (213 SE2d 829) (1975). See, however, *Ward v. State,* 239 Ga. 205 (5) (236 SE2d 365) (1977).

[9] We *do* compare cases as to which the death penalty could have been sought by the prosecutor but was not. Cf. Enmund v. Florida, —— U. S. —— (102 SC 3368, 73 LE2d 1140) (1982).

other cases appealed to this court since January 1, 1970, in which the murder occurred during the commission of a burglary. We find the following life cases to be dissimilar to appellant's case because the defendants were juveniles: *Miller v. State,* 240 Ga. 110 (239 SE2d 524) (1977) (16-year-old defendant); *Brooks v. State,* 238 Ga. 529 (233 SE2d 783) (1977) (16-year-old defendant); *Williams v. State,* 238 Ga. 298 (232 SE2d 535) (1977) (14-year-old defendant); *McClendon v. State,* 237 Ga. 655 (229 SE2d 427) (1976) (14-year-old defendant). We find other life cases cited by appellant to be dissimilar because the defendants were not the actual killers: *Smith v. State,* 245 Ga. 205 (264 SE2d 15) (1980); *Lane v. State,* 238 Ga. 407 (233 SE2d 375) (1977); *Dutton v. State,* 228 Ga. 850 (188 SE2d 794) (1972).

We note that appellant, after being discovered during the burglary, made no attempt to escape peacefully or to surrender, but fired first at an unarmed woman and thereafter at a man who, although armed, did not fire a shot.[10]

Moreover, a defendant's prospects for rehabilitation and the risk he presents to society are surely factors any sentencing authority would be entitled to consider in imposing sentence. Appellant had nine prior felony convictions, including four burglaries, an armed robbery, and an escape. By the time of sentencing, he had amassed three additional felony convictions, two for burglary and one for murder.[11]

We conclude that appellant's sentence is not excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. The similar cases listed in the appendix support the affirmance of the death penalty.

15. This case was tried under the Unified Appeal procedure. We have reviewed the record and find no addressable error not enumerated by appellant.

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 8, 1982—
REHEARING DENIED SEPTEMBER 28, 1982.

*Hugh Q. Wallace, John E. Simmons,* for appellant.
*Joseph H. Briley, District Attorney, Thomas J. Matthews,*

---

[10] By contrast, in *Burke v. State,* 248 Ga. 124 (281 SE2d 607) (1981), the victim had fired several shots at Burke before Burke returned fire.

[11] Thus, *Ross v. State,* 245 Ga. 173 (263 SE2d 913) (1980) is distinguishable because Ross, although not a juvenile, was only 18 years old. We also note that Ross presented an alibi that was supported by testimony from his mother, brother, and sister.

*Assistant District Attorney, Michael J. Bowers, Attorney General, George M. Weaver, Staff Assistant Attorney General,* for appellee.

APPENDIX.

*Bowden v. State,* 239 Ga. 821 (238 SE2d 905) (1977); *Stephens v. State,* 237 Ga. 259 (227 SE2d 261) (1976); *Moore v. State,* 233 Ga. 861 (213 SE2d 829) (1975); *Callahan v. State,* 229 Ga. 737 (194 SE2d 431) (1972); *Pass v. State,* 227 Ga. 730 (182 SE2d 779) (1971).