No. 88–7495.   POTTS v. GEORGIA.   Sup. Ct. Ga.   Certiorari denied.

JUSTICE MARSHALL, with whom JUSTICE BRENNAN joins, dissenting.

Adhering to my view that the death penalty is in all circumstances cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments, Gregg v. Georgia, 428 U. S. 153, 231 (1976) (MARSHALL, J., dissenting), I would grant the petition for certiorari and vacate the death sentence in this case.   Even if I did not take this view, I would grant the petition to consider whether a defendant may be prevented from questioning prospective jurors regarding their ability to adhere to a state sentencing law that precludes jurors from considering the likelihood of parole in their decision whether to impose life imprisonment or death.

Both the Georgia Supreme Court and the United States Court of Appeals for the Fifth Circuit have held that such a limit on *voir dire* is constitutional. 259 Ga. 96, 101, 376 S. E. 2d 851, 856 (1989); *King* v. *Lynaugh*, 850 F. 2d 1055, 1060–1061 (CA5 1988). These decisions, however, cannot be squared with minimal due process requirements permitting a defendant to ensure that the jurors who sentence him consider only those factors that the State has deemed relevant to their decision. In the many States that prohibit jury consideration of parole, the Constitution demands that the defendant be allowed to test the jurors' ability to set that factor aside.

Jack Howard Potts was convicted of murder. During *voir dire* in his sentencing proceeding, several members of the venire volunteered the information that their decision whether to impose the death penalty would be significantly affected by their assessment of the likelihood of parole if they sentenced petitioner to life in prison. Georgia law forbids jurors to consider the possibility of parole during their deliberations. Ga. Code Ann. § 17–8–76(a) (1982); *Horton* v. *State*, 249 Ga. 871, 873, 295 S. E. 2d 281, 284 (1982), cert. denied, 459 U. S. 1188 (1983). Accordingly, the trial judge asked these jurors if they could make their sentencing decision without regard to the possibility of parole; some suggested that they could not. Petitioner sought to question other prospective jurors about the nature and strength of their attitudes about parole on the ground that they, too, might be unable to set such considerations aside. The court refused to permit the questioning.

During its subsequent deliberations, the jury requested information about Potts' eligibility for parole if it were to impose a life sentence. The court instructed the jury to ignore parole in its deliberations, and the jury recommended that Potts be sentenced to death.

A sentence of death is the most violent and final sanction the State can inflict. Jurors who are charged with deciding whether to impose this most serious sanction must make their decision on the basis of law, not on prejudices that operate to the defendant's detriment. If a court fails to permit a defendant to take all reasonable steps to ensure impartial jury deliberations, it undermines the legitimacy of the capital sentencing process and of the legal system itself. By refusing to permit Potts to explore the jurors'

prejudices with respect to parole, the court seriously undermined his fundamental right to an unbiased jury.

It is a commonplace that a criminal defendant (and the state) is entitled to a jury that will follow the law as embodied in the trial judge's instructions. Thus, a juror who cannot conscientiously follow the law as articulated by the court must be excused. See, e. g., *Witherspoon* v. *Illinois*, 391 U. S. 510, 520 (1968) (on State's request, court must exclude for cause jurors who are so strongly opposed to the death penalty that they would in no circumstances consider imposing it). But the right to a jury that will follow the law would be nothing more than an empty promise if the criminal defendant were forbidden to inquire into prospective jurors' ability to abide by the court's instructions. A "right" without any effective means of vindication is hardly worthy of so lofty a designation.

The only means by which the defendant may vindicate his right to a jury that will follow the law is through our system of challenges—both peremptory and for cause. And the only means of developing the information necessary to decide which jurors should be challenged is *voir dire*. Accordingly, we have long held that, although the conduct of *voir dire* is a matter committed to the trial court's discretion, where there is substantial danger that jurors might consider impermissible factors in reaching their verdict, the defendant has a constitutional right to use *voir dire* to inquire into the jurors' beliefs respecting those factors. Most recently, in *Turner* v. *Murray*, 476 U. S. 28 (1986), we held that, in the sentencing phase of a capital case, a black defendant accused of killing a white man has a constitutional right to explore on *voir dire* whether prospective jurors harbor racial prejudices. *Id.*, at 36–37; accord, *Ham* v. *South Carolina*, 409 U. S. 524, 527 (1973); *Aldridge* v. *United States*, 283 U. S. 308, 315 (1931). When the defendant is a member of a racial minority, the danger that a juror might be influenced by racial prejudice is of such significance that the defendant *must* be permitted to ferret out such prejudice on *voir dire*.

A similar situation is presented here, where several jurors, without prompting, suggested that they would consider parole in their deliberations and that they would do so notwithstanding contrary instruction by the court. It is certainly not unreasonable to suggest that other jurors might well have subscribed to a similar prejudice. Where the risk of prejudice is both great and mani-

fest, it is an abuse of discretion for the trial court to prevent the defendant from inquiring into whether the jurors harbor such prejudice. Cf. *Ham* v. *South Carolina, supra,* at 527–528 (judge not required to examine jurors on *voir dire* to determine whether they are prejudiced against bearded people).

The court in this case instructed the jury to ignore the possibility of parole in deciding what sentence to impose. Without knowing whether the jurors were able to follow such instructions, however, we cannot be confident that the jury acted properly. Indeed, the efficacy of those instructions is cast into grave doubt by the indications that several prospective jurors were unable to follow them. Thus, the trial court's rulings were blatantly inconsistent: while acknowledging the applicability of a state law forbidding the jury to consider the possibility that Potts might be paroled if they did not sentence him to death, the court nonetheless deprived Potts of the right to develop sufficient information on *voir dire* to discern whether his sentencing jury would follow that law. Because I believe that the court thereby effectively deprived Potts of his constitutional rights, I respectfully dissent.