S95A0185. FLEMING v. THE STATE.
(458 SE2d 638)

HUNSTEIN, Justice.

Pursuant to the unified appeal procedure in capital felonies, OCGA § 17-10-35.1, we granted the application for interim appeal filed by Maurice Fleming, who has been charged with the armed robbery and malice murder of a Riceboro man.[1]

In his sole enumeration of error, appellant contends the trial court erred under *Simmons v. South Carolina*, ___ U. S. ___ (114 SC 2187, 129 LE2d 133) (1994) by ruling that in the closing argument

---

[1] The granted application for interim appeal by Fleming's co-defendant, Clevon Jamel Jenkins, is the subject of this Court's opinion in *Jenkins v. State*, 265 Ga. 539 (458 SE2d 477) (1995).

in the sentencing phase of his trial, the prosecutor may argue that sentencing appellant to death will deter others from crime, but that appellant may not counter the State's argument with evidence from experts that the death penalty is ineffective as a general deterrent. We find no error in the trial court's ruling and affirm.

We have previously determined that the State may assert and the defense may rebut the effectiveness of the death penalty as a general deterrent in closing argument in the sentencing phase of capital trials. *Walker v. State*, 254 Ga. 149, 159-160 (327 SE2d 475) (1985).[2] We noted that

> [i]n making this determination, we must be mindful of the differences between sentencing hearings and proceedings to determine guilt or innocence. In determining sentence, the jury considers different kinds of issues, and performs distinctly different duties, than it does in determining guilt. Therefore, limitations on argument entirely appropriate to the guilt phase of a trial cannot be applied mechanistically to the sentencing phase.

Id. at 158. This Court held that the jury properly could be invited to consider the deterrent effect of the death penalty as part of the jury's function to weigh the possible consequences of its verdict and to render a verdict which speaks on behalf of the community. Id. at 158-159. In this regard, we stressed the defendant's right to an " 'open and far-ranging argument' " under *Gregg v. Georgia*, 428 U. S. 153 (96 SC 2909, 49 LE2d 859) (1976), and the fact that on the issue of sentence "the defendant always has the *final* closing argument. [Cit.]" *Walker*, supra at 159. Our approval of deterrence argument in the sentencing phase of death penalty cases is consistent with the majority of federal and state courts considering this issue. See, e.g., *Brooks v. Kemp*, 762 F2d 1383, 1407 (11th Cir. 1985), vacated and remanded on other grounds, 478 U. S. 1016 (106 SC 3325, 92 LE2d 732) (1986).[3] See generally Stein, Closing Argument, § 71.50.

As to the trial court's refusal to allow appellant to introduce expert testimony on the subject of the nondeterrent effect of capital

---

[2] See also *Conner v. State*, 251 Ga. 113 (5) (303 SE2d 266) (1983); *Horton v. State*, 249 Ga. 871 (7) (295 SE2d 281) (1982); *Wilson v. State*, 246 Ga. 62 (3) (A) (268 SE2d 895) (1980).

[3] See also *Lesko v. Lehman*, 925 F2d 1527, 1545 (3rd Cir. 1991); *Davis v. Kemp*, 829 F2d 1522, 1527-1528 (11th Cir. 1987); *Coleman v. Brown*, 802 F2d 1227, 1239 (10th Cir. 1986); *Davis v. Singletary*, 853 FSupp. 1492, 1572 (M.D. Fla. 1994); *Bailey v. Snyder*, 855 FSupp. 1392, 1406 (D. Del. 1993); *Smith v. Armontrout*, 692 FSupp. 1079, 1094 (IV) (W.D. Mo. 1988). For state opinions see, e.g., *State v. Truesdale*, 393 SE2d 168 (IV) (S.C. 1990); *Pellegrini v. State*, 764 P2d 484, 487 (Nev. 1988); *Payne v. Commonwealth*, 357 SE2d 500, 505 (Va. 1987); *State v. McDonald*, 661 SW2d 497, 506 (Mo. 1983); *Commonwealth v. Zettlemoyer*, 454 A2d 937, 956-958 (Pa. 1982).

punishment on crime, this issue has been raised previously and decided adversely to appellant's position. *Stevens v. State*, 247 Ga. 698 (24) (278 SE2d 398) (1981).[4] Other states likewise refuse to admit such evidence. See, e.g., *State v. Woomer*, 299 SE2d 317, 320 (S.C. 1982) (evidence properly excluded because it consisted of matters of legislative determination).[5] See also Annotation, Admissibility of Expert Testimony as to the Appropriate Punishment for Convicted Defendant, 47 ALR4th 1069.

Under well-established holdings of this Court, both the prosecution and the defense have the opportunity to argue the issue to the jury; both the prosection and the defense are precluded from introducing evidence on the issue. Under these circumstances we find no possibility that appellant could receive the death penalty " 'on the basis of information which he had no opportunity to deny or explain.' [Cit.]" *Simmons v. South Carolina*, supra, 114 SC at 2192 (II).[6]

Accordingly, we find no error in the trial court's ruling. *Walker*, supra; *Stevens*, supra.

*Judgment affirmed. All the Justices concur, except Hunt, C. J., who concurs in the judgment only, and Benham, P. J., Fletcher and Sears, JJ., who dissent.*

HUNT, Chief Justice, concurring.

I concur in the judgment because I agree that argument on the issue of the general deterrent effect of the death penalty is permissible as long as that argument is confined by the rationale of *Walker v. State*, 254 Ga. 149, 159 (14) (327 SE2d 475) (1985) and I do not believe the opinion holds otherwise. In *Walker* we said:

> [While] considerations of neither general deterrence nor retribution will demand the imposition of the death penalty. . . . [T]hat is not to say that a prosecutor may not urge vigorously that a death sentence *is* appropriate punishment

---

[4] See also *Felker v. State*, 252 Ga. 351 (18) (314 SE2d 621) (1984); *Franklin v. State*, 245 Ga. 141 (7) (263 SE2d 666) (1980); *Brooks v. Kemp*, supra at 1409.

[5] See also *State v. Gilmore*, 681 SW2d 934, 947 (Mo. 1984).

Other states have also recognized the impropriety of admitting evidence on deterrence on the basis that such evidence constitutes an impermissible infringement on a matter solely for the legislature, although disallowing deterrence argument on other grounds. See, e.g., *People v. Williams*, 454 NE2d 220, 243 (Ill. 1983); *State v. Johnson*, 632 SW2d 542, 548 (Tenn. 1982); *People v. Bickley*, 372 P2d 100, 106 (Cal. 1962).

[6] This Court recognized in *Burgess v. State*, 264 Ga. 777 (33) (450 SE2d 680) (1994) that *Simmons v. South Carolina*

> stands for the relatively narrow proposition that, where the State makes an issue of the defendant's future dangerousness during the sentencing phase of a capital trial and state law prohibits the defendant's release on parole, the jury must be informed that the defendant is ineligible for parole. [Cit.]

(Emphasis omitted.) *Burgess*, supra at 788 (33).

in the case at hand, or that in doing so he may not remind the jury of the retributive and general deterrent function of its verdict.

(Emphasis in the original).

I read that to say, consistent also with *Simmons*, that a prosecutor may argue to the sentencing body both the purposes of the sentencing scheme and the appropriate level of punishment in a particular case. He or she may refer to deterrence, general or specific, as a valid goal of punishment. He or she may argue that notice of the jury's verdict of death will serve to inform the public of the serious consequences of the crime of murder and may well serve as a deterrent to the commission of that crime. But that is as far as a prosecutor may go. If the prosecutor insists that the goal of deterrence has in fact been achieved or that it is well known or well established; or if the prosecutor contends that jurisdictions that have enforced the death penalty have lower crime rates than those jurisdictions which do not, then I believe, in fairness, the defendant's response is not limited to argument but may include evidence to the contrary, if such is available.

Under these circumstances I would agree with the dissent that any reasonable interpretation of *Simmons* would authorize this result. I must also say that the dissent's position that no argument is permitted is the safer rule and prosecutors would be well advised to confine their remarks to the appropriateness of a particular punishment for a particular offender.

FLETCHER, Justice, dissenting.

I agree with Justice Sears that if the state asks the jury to impose the death penalty as a general deterrent to crime, fundamental due process requires that the defendant be able to rebut this argument with contrary evidence. I would go further, however, and exclude both argument and evidence on public policy grounds.

While the admission of expert evidence is required to satisfy due process, it will also prolong the trial and dramatically increase the cost as both the state and defense employ competing experts.[7] Additionally, I recognize that legislatures rather than juries are best equipped to consider sociological evidence on the deterrent value of the death penalty.[8] To meet these concerns and satisfy due process

---

[7] The state contends that it "could also search around the country and find its own experts that would come in and testify that imposing the death sentence has enormous value in deterring future crime . . . in general."

[8] In *Gregg v. Georgia*, 428 U. S. 153, 186 (96 SC 2909, 49 LE2d 859) (1976), the United States Supreme Court emphasized that deterrence is an issue for legislatures rather than courts and juries:

requirements we should simply preclude the state from arguing that the death penalty deters crime, and thus avoid the quagmire created by battling sociological experts. Prohibiting this argument and evidence will also allow the jury to remain focused on the *individual* circumstances of the crime and the defendant.[9]

Furthermore, while there are studies that suggest that capital punishment does not serve as a general deterrent to crime,[10] to date there are no statistics, data, or other evidence conclusively supporting or refuting the value of the death penalty as a general deterrent. Thus, argument or evidence about the general deterrent effect of the death penalty would merely manipulate a juror by taking advantage of preconceived notions of the nature and effect of capital punish-

---

[t]he value of capital punishment as a deterrent of crime is a complex factual issue the resolution of which properly rests with the legislatures, which can evaluate the results of statistical studies in terms of their own local conditions and with a flexibility of approach that is not available to the courts.

[9] *Gregg*, 428 U. S. at 206 (upholding Georgia's death penalty procedures because they "focus the jury's attention on the particularized nature of the crime and the particularized characteristics of the individual defendant"); *Connor v. State*, 251 Ga. 113, 118 (303 SE2d 266), cert. denied, 464 U. S. 865 (104 SC 197, 78 LE2d 173) (1983).

[10] These studies include: D. Baldus & James W. L. Cole, A Comparison of the Work of Thorsten Sellin & Isaac Ehrlich on the Deterrent Effect of Capital Punishment, 85 Yale L.J. 170 (1975); W. Bowers, Executions in America 19-20 (1974); T. Sellin, Capital Punishment, 25 Fed. Probation 3 (1961); Cochran, Chamblin & Seth, Deterrence or Brutalization? An Impact Assessment of Oklahoma's Return to Capital Punishment, 32 Criminology 107 (1994); W. Espy, Capital Punishment and Deterrence: What the Statistics Cannot Show, 26 Crime & Delinq. 537 (1980); T. Sellin, The Death Penalty (ALI 1959); W. Bowers & G. Pierce, The Illusion of Deterrence in Isaac Ehrlich's Research on Capital Punishment, 85 Yale L.J. 187 (1975); W. Bailey, Disaggregation in Deterrence and Death Penalty Research: The Case of Murder in Chicago, 74 J. Crim. L. 827 (1983); H. Bedau, The Death Penalty in America (3d ed. 1982); T. Sellin, The Penalty of Death (1980); W. Bailey, Murder and Capital Punishment: Some Further Evidence, 45 Am. J. Orthopsychiatry 669 (1975); H. E. Barnes & N. Teeters, New Horizons on Criminology 355 (1951); Brier & Fienberg, Recent Econometric Modeling of Crime and Punishment: Support for the Deterrence Hypothesis?, 4 Evaluation Rev. 147 (1980); Klein, Forst, & Filatov, The Deterrent Effect of Capital Punishment: An Assessment of the Estimates, in Deterrence and Incapacitation: Estimating the Effects of Criminal Sanctions on Crime Rates (A. Blumstein, J. Cohen, & D. Nagin eds. 1978); Passell & Taylor, The Deterrent Effect of Capital Punishment: Another View, 67 Am. Econ. Rev. 445 (1977); Bailey, A Multivariate Cross-Sectional Analysis of the Deterrent Effect of the Death Penalty, 69 Soc. & Soc. Research 193 (1980); Bailey, Imprisonment v. the Death Penalty as a Deterrent to Murder, 1 Law & Hum. Behav. 239 (1977); Black & Orsagh, New Evidence on the Efficacy of Sanctions as Deterrent to Homicide, 58 Soc. Sci. Q. 616 (1978); Forst, The Deterrent Effect of Capital Punishment: A Cross-State Analysis of the 1960's, 61 Minn. L. Rev. 743 (1977); Kleck, Capital Punishment, Gun Ownership, and Homicide, 84 Am. J. Soc. 882 (1979); Passell, The Deterrent Effect of the Death Penalty: A Statistical Test, 28 Stan. L. Rev. 61 (1975); Bailey, The Deterrent Effect of the Death Penalty: An Extended Time-Series Analysis, 10 Omega 237 (1979-80); Bowers & Pierce, Deterrence or Brutalization: What is the Effect of Executions?, 26 Crime & Delinq. 453 (1980); King, The Brutalization Effect: Execution Publicity and the Incidence of Homicide in South Carolina, 57 Soc. Forces 683 (1978); B. Forst, Capital Punishment and Deterrence: Conflicting Evidence, 74 J. Crim. Law 927 (1983); Archer, Gartner & Brittel, Homicide and the Death Penalty: A Cross-National Test of a Deterrence Hypothesis, 74 J. Crim. Law 991 (1983).

ment. Moreover, because the evidence is inconclusive, its use could lead a juror to impose the death penalty based, at best, on vague and unsubstantiated notions of deterrence, and, at worst, on false notions thereof. This court should not sanction such arbitrary sentencing decisions.

In summary, I am persuaded that the fairest practice is to exclude any argument or evidence on the deterrent value of the death penalty, as two of our sister states have done.[11]

I am authorized to state that Justice Sears joins in this dissent.

SEARS, Justice, dissenting.

Fleming contends that the trial court erred in ruling that the prosecutor may argue, without supporting evidence, that sentencing Fleming to death will deter others from crime, but that Fleming may not counter this argument with expert testimony that the death penalty is ineffective as a deterrent. I agree with Fleming that due process requires that he be permitted to present evidence to rebut the state's argument, and, therefore, I dissent.

Last year in *Simmons v. South Carolina*,[12] the United States Supreme Court held that a state may not urge the jury to impose the death penalty by arguing that the defendant presents a future danger without also informing the jury that the defendant is ineligible for parole. The basis for the Court's ruling was that due process does not allow execution of a defendant "on the basis of information which he had no opportunity to deny or explain."[13] In light of *Simmons*, allowing prosecutors to argue that the death penalty deters crime,[14] but at the same time refusing to allow a defendant to introduce expert evidence to the contrary[15] also violates the due process guarantee. Prohibiting a defendant from introducing evidence relating to the de-

---

[11] See *State v. Zuniga*, 357 SE2d 898, 920 (N.C.), cert. denied, 484 U. S. 959 (108 SC 359, 98 LE2d 384) (1987); *State v. Smith*, 857 SW2d 1, 13 (Tenn.) (prohibiting argument), cert. denied, ____ U. S. ____ (114 SC 561, 126 LE2d ____) (1993); *State v. Johnson*, 632 SW2d 542, 548 (Tenn.) (excluding evidence), cert. denied, 459 U. S. 882 (103 SC 183, 74 LE2d 148) (1982).

[12] ____ U. S. ____ (114 SC 2187, 129 LE2d 133, 147) (1994).

[13] 114 SC at 2192 (quoting *Gardner v. Florida*, 430 U. S. 349, 362 (97 SC 1197, 51 LE2d 393) (1977)). See also *Skipper v. South Carolina*, 476 U. S. 1, 5, n. 1 (106 SC 1669, 90 LE2d 1) (1986) (elemental due process requires admission of the defendant's relevant evidence to rebut prosecutor's argument on future dangerousness).

[14] See, e.g., *Walker v. State*, 254 Ga. 149, 159-160 (327 SE2d 475), cert. denied, 474 U. S. 865 (106 SC 185, 88 LE2d 154) (1985); *Horton v. State*, 249 Ga. 871, 876 (295 SE2d 281) (1982), cert. denied, 459 U. S. 1188 (103 SC 837, 74 LE2d 1030) (1983).

[15] Our previous cases that excluded expert evidence on the deterrent effect of the death penalty did not address the due process concerns raised when the evidence is offered to rebut an argument by the state. See *Stevens v. State*, 247 Ga. 698, 709 (278 SE2d 398) (1981), cert. denied, 463 U. S. 1213 (103 SC 3549, 77 LE2d 1396) (1983); *Felker v. State*, 252 Ga. 351, 382 (314 SE2d 621), cert. denied, 469 U. S. 873 (105 SC 223, 83 LE2d 153) (1984). We now overrule those decisions.

terrent effect of the death penalty deprives the defendant of an adequate "opportunity to deny or explain" the prosecutor's argument that executing this defendant will deter others from killing in the future.[16] The practical reality is that the prosecutor's argument will exploit jurors' beliefs about the effectiveness of the death penalty as a deterrent. Thus, under *Simmons*, the defendant must be afforded the opportunity to present evidence to rebut the argument used against him.

Not only did the trial court err in refusing to allow the defendant to present evidence to rebut the prosecutor's argument, but the court should not have allowed the prosecutor to present unsubstantiated argument about the deterrent effect of the death penalty in the first place. The United States Supreme Court has held that while retribution is a legitimate purpose of the death penalty and may be expressed by society's moral outrage, the value of capital punishment as a deterrent depends on statistical, empirical studies, the results of which can be evaluated. *Gregg v. Georgia*, 428 U. S. 153, 183-186 (96 SC 2909, 49 LE2d 859) (1976). Allowing mere argument by the state with no statistics or other empirical support flies in the face of *Gregg's* unequivocal pronouncement that the deterrent effect of the death penalty depends on such evidence.

I am authorized to state that Presiding Justice Benham and Justice Fletcher join in this dissent.

DECIDED JUNE 30, 1995.

*Jackson & Schiavone, G. Terry Jackson, Ray C. Smith,* for appellant.

*Dupont K. Cheney, District Attorney, J. Thomas Durden, Assistant District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Mary Beth Westmoreland, Senior Assistant Attorneys General,* for appellee.

*Cathy M. Alterman, Nicholas A. Lotito,* amici curiae.

---

[16] Compare *Horton v. State*, 249 Ga., supra at 873 (defendant could not describe the mechanics of electrocution in closing argument because the facts were not in evidence).